[Civ. No. 6275. Second Appellate District, Division Two.—April 14, 1930.]

MARGIE MORGAN, Respondent, v. LOS ANGELES ROCK AND GRAVEL CORPORATION (a Corporation), Appellant.

Joe Crider, Jr., J. S. Garnett and Howard E. Forster for Appellant.

Harry B. Ellison and E. E. Bennett for Respondent.

CRAIG, Acting P. J.—The respondent was awarded a verdict and judgment for personal injuries inflicted upon her by a truck of the Los Angeles Rock and Gravel Corporation; a motion for new trial was presented, which was denied, and the defendant appealed from both the judgment and the order denying said motion. ■ The asserted error in the order denying a new trial will be considered upon the appeal from the judgment, and the appeal therefrom is therefore dismissed. (*Heine Piano Co.* v. *Bloomer,* 183 Cal. 398 [191 Pac. 900].)

It appears that the plaintiff was struck by defendant's machine as she alighted from a west-bound street-car at the northeast corner of Pasadena Avenue and San Fernando Road, or Avenue 20, in the city of Los Angeles; she alleged that the truck was following the car at an excessive rate of speed, without proper control, and in violation of a city

ordinance; that as she attempted to walk toward the curb the driver of the truck proceeded through the intersection, throwing her to the pavement.

Issue was joined, and the defendant affirmatively alleged that the accident was unavoidable, and also that the accident resulted proximately from the plaintiff's contributory negligence in venturing into the pathway of the approaching truck. It is conceded that she alighted from the car into a space reserved for boarding and departing passengers, known as a "safety zone," about fifteen feet from the northerly curb and sidewalk, between which points a space is also marked for pedestrians to follow across that portion of the main thoroughfare; that the defendant's truck, loaded with gravel, and weighing about 32,000 pounds, ran into this last-mentioned space or area after the street-car had left, the traffic signals had changed, and respondent had started to cross from the safety zone to the curb. Respondent testified that she had noticed the truck about fifteen feet away, traveling in the same direction as her car, but that she expected it to stop; that as she stepped into the main roadway the signal changed, whereupon she returned to the safety zone, and did not again · proceed until the signal indicated that her way would be clear. The motor-truck continued westerly after the signals had started traffic in a northerly direction, and ran upon the respondent, causing her injuries. It is also admitted that the accident occurred at about noon, and that the day was clear.

Appellant devotes a major portion of its briefs to evidence and argument as to the operation of signals, the legal duties and privileges of pedestrians and drivers of vehicles, and principally relying upon the provisions of the ordinance, insists that respondent was herself so negligent as to preclude her right of recovery. Sections 5 and 12 of said provisions recite in part: "When such bell is sounded no traffic shall enter an intersection until a green or 'Go' signal is shown." "At intersections where traffic is directed by a police officer or by a traffic signal, it shall be unlawful for any pedestrian to cross the roadway other than with released traffic." To quote appellant's theory:

"At the time Miss Morgan was proceeding in a northerly direction across the northerly half of Pasadena avenue traffic in all directions was 'blocked.' The signals were

'against her.' In a nutshell it is our contention that if Miss Morgan had obeyed the ordinance she would not have left the safety zone and started for the north curb until the ringing of the second bell, at which time the traffic signals at the southeast corner and at the northwest corner would have displayed the word 'Go,' and while said last-mentioned traffic signals displayed the word 'Go' the traffic signal located at the northeast corner, and which controlled the movement of defendant's truck in a westerly direction, would have displayed the word 'Stop.' ''

We are cited to no authority holding that the mere violation of traffic regulations, even if conclusively shown by the evidence, is sufficient to bar recovery by a pedestrian who, during the exercise of ordinary care, may have been injured by an automobile which entered an intersection when "traffic in all directions was blocked." In fact, appellant cites no authorities whatever except to distinguish varying conditions and circumstances wherein no different rules of conduct or of procedure in such cases are recognized or followed.

The ordinance is not definite or clear as to the right or duty of a pedestrian unavoidably left by a street-car near the center of the street upon the changing of signals. However, it is obvious that respondent did not "enter an intersection" of the highways, as the term is commonly accepted and understood, and we are not to be understood to say as a matter of law in the face of her denials that in any event she attempted to cross in the pedestrians' area in violation of the provisions relied upon by appellant. She testified that she was watching the signals, and believed that she was crossing "with released traffic," and in anticipation that the truck would be so controlled as to let her pass. Appellant's driver testified that with properly adjusted and operating brakes he could stop his truck within a space of fifteen to eighteen feet when driving at a rate of ten miles per hour; and while it appears that he was at the time in question going but four or five miles an hour, he first saw respondent at a distance of about fifteen feet. Diagrams in the record marked by witnesses at the trial, indicate that he continued through the street intersection after striking respondent. He also tested his

brakes in the morning, but was aware that oil could and that it might leak into them. From this and an abundance of like evidence it is apparent that while grave doubt may have arisen in the minds of the jury as to whether respondent had violated the law or was negligent, they were not unwarranted in concluding that the allegations of her complaint were amply sustained. ■ However, if her momentary haste did contribute to her injuries, pedestrians and vehicles have equal rights in public streets, and a violation of the ordinance would not alone be sufficient to bar recovery. (*Robinson* v. *Clemons,* 46 Cal. App. 661 [190 Pac. 203]; *Giorgetti* v. *Wollaston,* 83 Cal. App. 358, [257 Pac. 109]; *Saltzen* v. *Associated Oil Co.,* 198 Cal. 157 [244 Pac. 338].) ■ It was incumbent upon the driver to foresee the probable presence of pedestrians upon the street, especially where street-cars receive and discharge their passengers, and to bear in mind the weight of his load, the condition of his brakes and other attendant circumstances. The rules in such cases were announced in *Rush* v. *Lagomarsino,* 196 Cal. 308 [237 Pac. 1066], as follows:

"The negligent act or omission of a plaintiff which will exculpate a defendant from responding to the plaintiff in damages resulting from the plaintiff's negligent act or omission, must be a contributing proximate cause of the damages. (*Flynn* v. *San Francisco & S. J. R. R. Co.,* 40 Cal. 14, 19 [6 Am. Rep. 695]; *Besler* v. *Sacramento Gas & Elec. Co.,* 158 Cal. 514, 519 [Ann. Cas. 1912A, 642, 111 Pac. 530].) 'The formula is not that any degree of negligence on the part of the plaintiff which directly concurs in producing the injury will constitute a defense; but if the negligence of the plaintiff, which amounts to absence of ordinary care, shall contribute proximately to the injury, plaintiff shall not recover.' (*Robinson* v. *Western Pacific R. R. Co.,* 48 Cal. 409, 422, 423; *Strong* v. *Sacramento & Placerville R. R. Co.,* 61 Cal. 326, 328.) . . .

"The right of drivers of automobiles to use public highways is not superior to that of the humblest pedestrian and in the exercise of a common right to the use of the public highways all persons using the same must exert constant care and caution for the conservation of their correlative

rights commensurate with the special hazard which is peculiar to and nowadays ever present in the use of public highways. Accordingly a driver of an automobile 'has no right to assume that the road is clear, but under all circumstances and at all times he must be vigilant and must anticipate the presence of others. . . . The fact that he did not know that any one was on the highway is no excuse for conduct which would have amounted to recklessness if he had known that another vehicle or person was on the highway.' (*Meyers* v. *Bradford*, 54 Cal. App. 157, 159 [201 Pac. 471].) Even though the operator of an automobile may be rigidly within the law, 'he still remains bound to anticipate that he may meet persons at any point in the street and he must, in order to avoid the charge of negligence, keep a proper lookout for them and keep his machine under such control as will enable him to avoid a collision with another person using proper care and caution and if the situation requires, he must slow up and stop.' (*Reaugh* v. *Cudahy Packing Co.*, 189 Cal. 335, 340 [208 Pac. 125, 127].)''

In the instant case the jury were instructed fully in these well-established principles, and that they must find that the evidence failed to show, by a preponderance thereof, that the plaintiff was guilty of negligence contributing proximately thereto, else they could not legally award her damages but must render a verdict for the defendant. This is in accord with the rules announced by the Supreme Court in *Giorgetti* v. *Wollaston, supra,* in the following language:

''The failure of any person to perform a duty imposed upon him by law raises a presumption of negligence; and if such negligence proximately contributes to his injury he cannot recover (*McKune* v. *Santa Clara etc. Co.*, 110 Cal. 486 [42 Pac. 980]; *Berkovitz* v. *American River Gravel Co.*, 191 Cal. 195 [215 Pac. 695]; *Shimoda* v. *Bundy,* 24 Cal. App. 675 [142 Pac. 109].) This presumption, however, is not conclusive, but may be overcome by evidence that the failure was excusable or justifiable under the circumstances and not inconsistent with the exercise of due care.''

As we have seen, it may seriously have been questioned as to whether the plaintiff in this case disobeyed a signal or was not excusable for her movements under all

of the circumstances. The evidence in this regard was at least conflicting, and any question as to the dereliction of either party was one for the jury to determine. This being true, an appellate tribunal is not authorized or inclined to disturb their conclusions as expressed by their verdict.

■ It cannot be said as a matter of law that acts or omissions of the plaintiff proximately contributed to the accident unless the court is impelled to say that the evidence is not in conflict upon the facts and that reasonable men can draw but one inference therefrom which points unerringly to the plaintiff's negligence. (*Reaugh* v. *Cudahy Packing Co.*, 189 Cal. 335 [208 Pac. 125].) That such a case is not here presented is too obvious to justify further discussion.

■ The trial court refused requested instructions to the effect that if they should find that the plaintiff stepped from the street-car to the safety zone with intentions of crossing the street, it was her duty to await a signal releasing traffic, and that if she started before the signal so indicated, she was guilty of negligence as a matter of law. As already observed, the ordinance does not specify the duties of pedestrians who may find themselves within a safety zone upon a changing of signals, and under other facts and circumstances appearing, the question as to respondent's exercise of care was not one of law, but one of fact.

■ It is next complained that the trial court erred in instructing the jury that pedestrians have equal rights with vehicles in public streets, but that the degree of care required of the driver of a motor vehicle is far greater than that of a pedestrian; that the driver is required to use every reasonable precaution to insure safety to himself and to pedestrians; that if they should find that the plaintiff at the time used ordinary care for her own safety, the defendant was legally at fault in causing her injury. This instruction stated again the rules announced, in language used, by our Supreme Court. (*Raymond* v. *Hill,* 168 Cal. 473 [143 Pac. 743].) Appellant criticises it because authorities in which it was upheld are distinguishable in many respects as to positions of parties, local conditions and other points of fact, but since the fundamental principles

announced consist of recognized rules applicable generally, the cases are not so distinguishable. As said in *Weihe* v. *Rathjen Mercantile Co.*, 34 Cal. App. 302 [167 Pac. 287], following *Raymond* v. *Hill, supra:* ''When the instructions are read together and construed as a whole, they are consistent with each other and not confusing, and appear to fairly cover the point discussed. It cannot be said, therefore, that the jury was misled.'' In the instruction in question, it may be that a better word might have been selected than ''insure.'' However, we think it was meant in the sense of ''assure'' and must have been so understood by the jury.

Minor objections are raised as to rulings upon the evidence, etc., which we think are covered by what has been said, and it is not necessary to consume the time required by their consideration in detail.

The judgment is affirmed.

Thompson (Ira F.), J., concurred.

Works, P. J., being absent, did not participate.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 14, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 12, 1930.