[Civ. No. 12941.   Second Dist., Div. Two.—April 9, 1941.]

MAX SCHULMAN et al., Respondents, v. LOS ANGELES RAILWAY CORPORATION (a Corporation) et al., Appellants.

Harry C. Cogen for Respondents.

Gibson, Dunn & Crutcher and Philip C. Sterry for Appellants.

WOOD, J.—Mrs. Sarah Schulman, 66 years of age, was struck by a bus owned by defendant corporation and driven by defendant Richards on June 3, 1939. The injuries she received resulted in her death and this action was commenced by her five adult children to recover damages from defendants. A jury returned a verdict in the sum of $2,500 against defendants, who have appealed from the ensuing judgment.

There is a vast difference between the views of the parties on the subject of the alleged contributory negligence of decedent. Defendants concede that there is sufficient evidence to support a finding that the bus driver was negligent but they assert that decedent was guilty of contributory negligence as a matter of law. On the other hand plaintiffs assert that "only one conclusion is possible from these facts—the de-

ccased had correctly judged her ability to cross the street in ample time but failed to take into account that, though in plain sight, at a regular crosswalk, a bus would suddenly and without warning change its course and run her down within 1½ feet from safety''.    In deciding between these two views this court must accept as true all evidence tending to support the verdict and must indulge in favor of plaintiffs every inference that can reasonably be drawn from the evidence.   (*Cope* v. *Goble*, 39 Cal. App. (2d) 448 [103 Pac. (2d) 598].)

The accident occurred at about 8 o'clock in the evening at the intersection of Soto and Folsom Streets in the city of Los Angeles.   Soto Street runs in a northerly and southerly direction and is 56 feet in width.   Folsom Street runs in a westerly and easterly direction and is 40 feet in width.   There is a "jog" in the street, the westerly extension from Soto Street being about 45 feet south of the easterly extension. At the time of the accident the street lights were in operation. Taking the evidence in the light most favorable to plaintiffs, in accordance with the above mentioned rule, it appears that defendants' bus was traveling in a northerly direction on Soto Street at a rate of speed "a little better than 35 miles per hour".   The bus was several minutes late and its speed was not slackened before it struck decedent.   Mrs. Schulman was standing at the curb on the west side of Soto Street at a point opposite the north curb line of the easterly extension of Folsom Street.   At that time there was considerable south bound traffic on Soto Street but there was no north bound traffic on the street except defendants' bus and a car driven by Donald Erickson, which was following the bus at a distance of about 30 feet.   Mr. Erickson testified that his car was approximately 100 feet south of the south curb line of the easterly extension of Folsom Street when he saw Mrs. Schulman step from the curb.   At that time Mr. Erickson saw an "opening" in the south bound traffic and was intending to pass the bus.   He testified that Mrs. Schulman looked to the north and to the south as she stepped from the curb and then walked directly toward "the sidewalk or curb line on the northeast part of Folsom.   It looked as though she walked directly across."   Mrs. Schulman was walking rapidly. Erickson further testified that although he observed Mrs. Schulman she did not look "either way" when she reached

the center of the street. He stated: "From the time she stepped off the curb I did not see her look again toward the bus."

Police Officer Sullivan testified that the district was posted at a 25 miles per hour speed limit; that he arrived shortly after the accident and found the body of decedent lying near the east curb of Soto Street at a point 12 feet north of the north curb of the easterly portion of Folsom Street. The bus was standing 35 feet north of the north curb of the easterly portion of Folsom Street with its "right hand edge being approximately 6 feet west of the east curb". The right front fender had been damaged slightly, "right on the right edge, the crown of the fender". The bus driver told the officer that the position of the bus at that time "was the same in which it came to a stop after the impact".

█ If reasonable minds could draw different conclusions upon the issue of the alleged contributory negligence of decedent, the question was one of fact for the determination of the jury. (*Wise* v. *Stott*, 114 Cal. App. 702 [300 Pac. 883].)

█ The jury could take into consideration the fact that at the time Mrs. Schulman stepped from the curb to cross Soto Street she was at a pedestrian crosswalk. It is the duty of the driver of a vehicle to yield the right of way to a pedestrian crossing within an unmarked crosswalk at an intersection. (California Vehicle Code, sec. 560.) They could conclude that Mrs. Schulman looked in the direction of the bus and saw it approaching at a distance of approximately 110 feet from the crosswalk, since Erickson testified that his car was approximately 100 feet south of the south curb of Folsom Street, the width of Folsom Street being greater than the distance between the bus and the Erickson car. At the time she started across the street Mrs. Schulman had the right to assume that the bus driver would obey the law and drive in a proper manner. Since the bus was lighted it was difficult for decedent to judge accurately of its speed. She did in fact arrive at the far side of the street before she was struck by the right front fender of the bus, and this notwithstanding the fact that the bus was traveling at a greater speed than was to be expected and did not slow down and yield to her the right of way. Moreover, the jury might have concluded that the witness Erickson, who was looking for a chance to pass the bus, was not entirely dependable in his

statement that Mrs. Schulman did not look toward the bus a second time. It is true that he stated that he did not see her turn her head again in the direction of the bus but under the circumstances shown in the evidence it is reasonable to argue that she might have turned her head sufficiently to see the bus without the movement of her head being noticed by Mr. Erickson. ■ Furthermore, plaintiffs in establishing their case could call to their aid the presumption that decedent used ordinary care for her safety at the time of the accident. This presumption is evidence and is sufficient to support a verdict unless it be overcome by other evidence in the case. (*West-berg* v. *Willde,* 14 Cal. (2d) 360, 365 [94 Pac. (2d) 590].) ■ We are satisfied that the evidence is sufficient to support the implied finding of the jury that decedent was not guilty of contributory negligence.

■ Defendants contend that the court erred in instructing the jury that there was a presumption that Mrs. Schulman used ordinary care for her safety as she was crossing Soto Street. Instructions containing this presumption have given rise to many decisions of reviewing courts of California. In the leading case of *Mar Shee* v. *Maryland Assur. Corp.,* 190 Cal. 1, 9 [210 Pac. 269], the rule is laid down in the following language of Mr. Justice Myers: "From the foregoing we deduce that a fact is proved as against a party when it is established by the uncontradicted testimony of the party himself or of his witnesses, under circumstances which afford no indication that the testimony is the product of mistake or inadvertence; and that when the fact so proved is wholly irreconcilable with the presumption sought to be invoked, the latter is dispelled and disappears from the case." In *Westberg* v. *Willde, supra,* decided in October, 1939, the authorities are extensively reviewed and it is stated that the giving of the instruction is of doubtful propriety in a case other than a death case, where the plaintiff has testified respecting his acts and conduct and his testimony and that of his witnesses did not clearly and unmistakably clear him of the charge of negligence. But it is expressly held that the situation is different where the acts and conduct of a deceased person are the subject of inquiry and that in such a situation the rule of the Mar Shee case should be followed. In the case under review it cannot be successfully contended that facts were established by plaintiffs' witnesses which are

wholly irreconcilable with the presumption embodied in the instruction attacked by defendants.

■ The defendants complain of the giving of instruction No. XV, which is as follows: "You are instructed that there is no rule of law that absolutely requires a person to keep a continuous gaze in the direction from which motor vehicles are expected, after having once looked and justifiably concluded that he can cross an intersection in safety." This instruction is in language very similar to that used by the court in *Filson* v. *Balkins*, 206 Cal. 209, 212 [273 Pac. 578]. It does not contain an erroneous statement of the law but defendants contend that it invades the province of the jury by assuming that decedent was justified in concluding that she could cross with safety. Although the instruction is subject to improvement in that it could well have been made more clear that the jury could pass upon the reasonableness of the conclusion made by decedent as she started to cross the street, we are satisfied that the instructions as a whole fairly informed the jury on the subject matter and that the jury was not misled in any particular. The court gave the jury a clear definition of ordinary care and told them that a failure to use ordinary care at all times while crossing the street would be negligence which would prohibit a recovery by plaintiffs. The court specifically referred to the duties of the driver and the pedestrian and stated that "a pedestrian . . . too, will be alertly conscious of the mechanical power acting, or that may act, on the public roadway, and of possible serious consequences from any conflict between himself and such forces. And the caution required of him is measured by the possibilities of injury apparent in the conditions at hand."

■ Defendants also complain of the failure of the court to instruct the jury at their request that it was the duty of decedent "to look for approaching traffic at such point and in such manner as would enable her to determine if she could proceed across said street in safety". ■ The court in instructing the jury need not repeat the rules of law applicable to the case in such manner as to emphasize the points made by either party. In *Johnstone* v. *Brewer*, 40 Cal. App. (2d) 583 [105 Pac. (2d) 365], the plaintiff was struck on a street at a point between two intersections. He requested the court to instruct the jury concerning the duty of a pedestrian crossing at a

point other than in a crosswalk to yield the right of way and asked the court to further instruct the jury that the provisions of the code section did not relieve the driver of a vehicle from the duty to exercise due care for the safety of any pedestrian upon a roadway. In sustaining a judgment for the defendant the reviewing court stated: "The asserted error in the refusal of the court to give this instruction is that the jury was not instructed that defendant was bound to exercise due care toward plaintiff even though the latter was not in a crosswalk at the time of the accident. The court did not err in refusing to give the above instruction, for by other instructions the jury was clearly and adequately advised that both plaintiff and defendant were bound to exercise ordinary care under all the circumstances and that neither was required to use a greater degree of care than the other." The remarks of the court in the Johnstone case are applicable to the present situation, for the jury was adequately advised that decedent had the duty of exercising due care at all times in crossing the street. In *Salomon* v. *Meyer*, 1 Cal. (2d) 11 [32 Pac. (2d) 631], the plaintiff was an elderly woman who crossed at a street intersection in a pedestrian lane. She testified that she looked to the right and to the left, saw a car approaching in each direction, that she thought that she was safe and started across the street at a fast walk. She did not look again either to the right or to the left and was struck by a passing car. The court instructed the jury: "I instruct you that it is a duty resting upon any person attempting to cross a street that is likely to be dangerous, before placing himself or herself in a position of danger, to look in the direction from which such danger is to be anticipated. This is a continuing duty, and is not met by looking once and then looking away. In the exercise of ordinary care it is the duty of the pedestrian to look to the right and to the left whenever he or she has voluntarily put himself or herself into a position which may be one of peril coming from either direction." In holding that the trial court committed prejudicial error in giving this charge to the jury the Supreme Court stated the rule as follows: "Whenever there is room for an honest difference of opinion between men of average intelligence the question of whether the plaintiff was negligent in failing to look again in the direction from which the

defendant's car was approaching is a question of fact for the jury and the finding of the triers of fact is conclusive."

■ Defendants contend that the verdict is excessive and that the court erred in refusing to give the jury any instruction that would have told them in effect that plaintiffs could not recover more than nominal damages. They point out that decedent was 66 years of age and that she was not supporting the plaintiffs, her adult children. In arguing that the judgment for $2,500 is not excessive plaintiffs point out that the funeral expenses amounted to $212.75. The court properly told the jury that in case they should find for plaintiffs they could include the pecuniary value of the society, comfort, care, protection and right to receive support, if any, which each plaintiff has lost by reason of the death of their mother. In an action brought by the heirs of one who has been killed by the negligent act of another "damages may be given as under all the circumstances of the case may be just". (Code Civ. Proc., sec. 377.) In proper cases adult and nondependent children may recover damages estimated upon a pecuniary basis for loss of society, comfort and protection. (*Williams* v. *McDowell*, 32 Cal. App. (2d) 49, 54 [89 Pac. (2d) 155].) ■ It is within the sound discretion of the jury to fix the amount of the damages and the award of the jury should not be disturbed by a reviewing court unless the amount is so large as to suggest passion, prejudice or corruption on the part of the jury. (*Williams* v. *McDowell, supra.*) In *Corvin* v. *Hyatt,* 10 Cal. App. (2d) 107 [51 Pac. (2d) 176], a verdict of $5,000 for the death of the mother of the plaintiffs, who was 77 years of age, was held not to be excessive. The amount of the award in the instant case does not justify a reversal of the judgment.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.