[L. A. No. 22855. In Bank. Jan. 12, 1954.]

LAURA CUCINELLA et al., Appellants, v. WESTON BISCUIT COMPANY, INC. (a Corporation) et al., Respondents.

William W. Waters and Henry F. Walker for Appellants.

Hunter & Liljestrom and Harold J. Hunter for Respondents.

SCHAUER, J.—Plaintiffs, who are husband and wife, appeal from an adverse judgment entered upon a jury verdict in their action to recover damages resulting when plaintiff wife was struck by an automobile while she was attempting to walk across San Fernando Road in the city of Los Angeles. We have concluded that no prejudicial error or miscarriage of justice is shown and that the judgment should be affirmed. (Cal. Const., art. VI, § 4½.)

The accident occurred about 9:30 in the morning of April 25, 1950. The weather was clear and dry and visibility was good. Plaintiff[1] had walked in an easterly direction halfway across San Fernando Road, a north-south highway at the point involved, some 24 feet south of its intersection with Lacy Street, and had paused at the double white line in the center of the highway, waiting for traffic to "give me a chance" to complete the crossing. She testified that she suddenly became frightened by an oncoming truck and, without looking further at traffic, turned around in a clockwise direction and attempted to return to the westerly curb from which she had started. At a point 8 or 9 feet from such

---

[1]Unless otherwise stated the designation "plaintiff" refers to the injured wife.

curb she was struck by an automobile traveling south on San Fernando and driven by defendant Smith in the course of his employment by defendant Weston Biscuit Company, Inc. Plaintiff did not remember taking any steps after her turn in the center of San Fernando, and the next she knew was when she was lying in bed in the hospital.

Defendant Smith testified that he first saw plaintiff when he was some 70 or 80 feet away from the point at which she attempted to return to the curb; that he was then traveling 30 or 35 miles an hour, and no cars were ahead of him; plaintiff "ran out into the center of the street and appeared to take two or three steps past the center, then she whirled to her right and ran back towards the west curb . . . in approximately a straight line." Defendant was startled and "slammed on my brakes." He continued "to hold the brakes on" until his car stopped, and stated he was going approximately 3 miles an hour when he struck plaintiff. Defendant's tires "laid down" 72 feet of "skid-marks" in the street, from which an expert witness computed that the minimum speed the car was traveling "when it first started to lay down skid-marks" was 36 miles an hour.

The drivers of two cars which were traveling immediately behind defendant and in the same (right hand or "curb") lane of traffic both testified that all three cars were traveling approximately 30 to 35 miles an hour, and both drivers saw plaintiff suddenly turn to her right in the center of San Fernando and start to run back in a straight line to the curb. One of the drivers testified that "There was a lot of heavy traffic . . . there on San Fernando Road that morning." Other evidence established that morning traffic on San Fernando is "heavy" during the period from 8 to 10 o'clock.

Plaintiff's first contention on appeal is that the trial court erred in admitting evidence of the "average speed" traveled by vehicles in the area of the accident, in the face of testimony by a police officer working in the area that San Fernando Road was posted with 25-mile-an-hour speed limit signs at points approximately $1\frac{1}{2}$ miles north and $1\frac{1}{4}$ miles south of the Lacy Street intersection. On cross-examination by counsel for defendant the officer was permitted to also testify, over objection by plaintiff, that he would "estimate" that "the average speed usually traveled at that time by motorists" was "about 30 miles an hour along there." Other evidence in the record discloses that for some five years immediately preceding the accident

plaintiff had been intermittently employed in a laundry at the San Fernando and Lacy intersection, and that defendant drove "up and down San Fernando" on an average of several times a week and thus was also familiar with the area in which the accident occurred. Plaintiff's arguments appear to be predicated upon the assumption that the evidence as to average speed of traffic in the area was offered by defendant solely to excuse his own conduct in driving at a rate admittedly in excess of the posted limits. However, as in *Fowler* v. *Key System Transit Lines* (1951), 37 Cal.2d 65, 68 [230 P.2d 339], defendant pleaded that plaintiff was herself guilty of negligence proximately contributing to her injuries. Under such circumstances and in view of the undisputed fact that plaintiff attempted to return to the curb without looking for traffic which might be approaching, it appears that here, as in the Fowler case, the evidence of custom bore on the issue of contributory negligence and was "admissible as a part of the res gestae for the purpose of giving to the jury full knowledge of all the facts and circumstances which existed at the time and place of the accident, which were known to the parties, so as to permit the jury to pass upon the question of whether plaintiff conducted himself as an ordinary and reasonable person would have conducted himself in the light of all of the circumstances." (*Muir* v. *Cheney Bros.* (1944), 64 Cal.App.2d 55, 63 [148 P.2d 138], quoted at page 69 of *Fowler* v. *Key System Transit Lines, supra.*)

Plaintiff next urges error in the trial court's refusal to permit her to prove that during her employment by the laundry she as well as other laundry employes had customarily crossed San Fernando at the point here in question, that formerly a crosswalk had been marked there with white lines, and that a marked crosswalk had been authorized and directed at the point by "competent city authority." However, other testimony showed that between 125 and 150 pedestrians crossed San Fernando Road daily at the point between 7 a. m. and 6 p. m., that some six months prior to the accident San Fernando Road had been resurfaced, and that at the time of the accident two rows of metal buttons extended out from the west curb some 7 to 12 feet into the roadway which was 56 feet wide. Moreover, following objection by defendant's counsel to a question put by plaintiff's attorney as to how far the buttons extended out into San Fernando before it was resurfaced, and the attorney's statement that

the witness would answer that the "metal markers extended completely across the street," the court ruled that "I will permit you to ask him if the buttons had previously gone across the street, or had at the time it was re-surfaced . . ." Although the record does not indicate that plaintiff's counsel thereafter took advantage of the court's ruling, it is apparent that plaintiff is not in a position to complain, since opportunity was thus provided her to prove that a marked crosswalk formerly existed. Plaintiff cites no authority and none has been discovered supporting her claim that although a crosswalk actually was not marked at the time of the accident and had not been during the previous six months, she should have been permitted to prove that a marked crosswalk had been authorized and directed by "competent city authority." On the record we perceive no error in the ruling. ▉ Unless an authorized marked crosswalk is actually marked the mere fact that it has been authorized cannot affect the duties of persons using the street.

▉ Finally, plaintiff contends that error prejudicial to her case resulted from the court's refusal to give the following two instructions requested by plaintiff by number (Nos. 201-E and 102-A; see paragraph (a) of Rule 16, Rules for Superior Courts, 33 Cal.2d 7) from "California Jury Instructions, Civil":

No. 201-E: "While it is the duty of both the driver of a motor vehicle and a pedestrian, using a public roadway, to exercise ordinary care, that duty does not require necessarily the same amount[2] of caution from each. The driver of a motor vehicle, when ordinarily careful, will be alertly conscious of the fact that he is in charge of a machine capable

---

[2]Originally instruction No. 201-E used the word "degree" instead of "amount." The inaccuracy of saying that a different "degree of care" may be exacted of the driver of an automobile as compared with a pedestrian is forcefully pointed out in *Lasater* v. *Oakland Scavenger Co.* (1945), 71 Cal.App.2d 217, 221 [162 P.2d 486]. As stated by the court there, "The decedent was struck by a truck while crossing a street in the darkness. Appellants proposed an instruction that by reason of the fact that she was dressed entirely in black she should have used 'a greater degree of care' for her own safety. The instruction was erroneous in using the word 'degree' instead of 'quantum' or 'amount.' The degree of care required of a person for his own safety is always the same, i.e., ordinary care, although in some circumstances the quantum or amount of care required to reach the degree of ordinary care is greater than in others."

In 1950 instruction No. 201-E was amended by substituting the word "amount" for the word "degree." Inasmuch as this trial took place in 1952, plaintiff must be considered to have requested the instruction as it reads subsequent to the 1950 amendment.

of projecting into serious consequences any negligence of his own. Thus his caution must be adequate to that responsibility as related to all the surrounding circumstances. A pedestrian, on the other hand, has only his own physical body to manage and with which to set in motion a cause of injury. While, usually, that fact limits his capacity to cause injury, as compared with a vehicle driver, still, in exercising ordinary care, he, too, will be alertly conscious of the mechanical power acting, or that may act, on the public roadway, and of the possible, serious consequences from any conflict between himself and such forces. And the caution required of him is measured by the possibilities of injury apparent to him in the conditions at hand, or that would be apparent to a person of ordinary prudence in the same position.''

No. 102-A: ''Inasmuch as the amount of caution used by the ordinary prudent person varies in direct proportion to the danger known to be involved in his undertaking, it follows that in the exercise of ordinary care the amount of caution required will vary in accordance with the nature of the act and the surrounding circumstances. To put the matter in another way, the amount of caution required by the law increases as does the danger that reasonably should be apprehended.''

At defendants' request, the court did instruct as follows: ''It is the duty of every person using a public highway, whether a pedestrian or the driver of any kind of vehicle, to exercise ordinary care at all times to avoid placing himself or others in danger and to avoid a collision,'' and that ''The law imposes upon the operator of any vehicle using a public highway, and upon a pedestrian, the same duty, each to exercise ordinary care to avoid causing an accident from which injury might result. This duty continues even when one has the right of way over the other . . .''

Concerning the duties of a pedestrian attempting to cross a street, the court, at defendants' request, included the following instructions: ''What observations he should make, and what he should do for his own safety, while crossing the street are matters which the law does not attempt to regulate in detail and for all occasions, except in this respect: it does place upon him the continuing duty to exercise ordinary care to avoid an accident . . . While as to a roadway locality such as that involved in this case, a pedestrian has a right to cross the road at any point, these factors of consideration enter into the question of what conduct is required of him

in the exercise of ordinary care. First: if he crosses at a point other than within a marked crosswalk or within an unmarked crosswalk at an intersection, the law requires him to yield the right of way to all vehicles on the roadway so near as to constitute an immediate hazard. Second: the amount of caution required to constitute ordinary care increases as does the danger that a reasonably prudent person, in like position, would apprehend in the situation. For example, heavy vehicular traffic, fast traffic, poor visibility, obstructions to view—any of these or any other perceivable factor increasing the hazard, increases the amount of caution which an ordinarily prudent person would use."

Relating specifically to the duties of the operator of a motor vehicle the court instructed, among other things, that "Section 671 of the Vehicle Code in effect at the time of the accident provided as follows: 'The driver of a motor vehicle when reasonably necessary to insure safe operation shall give audible warning with his horn. Such horn shall not otherwise be used.'

"It will be noted that the law does not prescribe the specific circumstances under which a horn shall be used, but provides that warning shall be given when reasonably necessary to insure safety. This means that the question whether or not the horn should have been sounded in this case is a question of fact for you to decide in the light of all the surrounding circumstances, judging the defendant's conduct by what might have been expected of a reasonably prudent person under similar circumstances.

"The speed at which a vehicle travels upon a highway, considered as an isolated fact and simply in terms of so many miles an hour, is not proof either of negligence or of the exercise of ordinary care.

"Whether that speed is a negligent one is a question of fact, the answer to which depends on all the surrounding circumstances.

"The basic speed law of this state, as provided in Section 510 of the Vehicle Code, is as follows:

" 'No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent, having due regard for the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property.'

"A violation of this basic rule is negligence.

"You are instructed that the Vehicle Code of the State

of California, in full force and effect at the time of the accident, provided as follows:

" 'Section 511. The speed of any vehicle upon a highway not in excess of the limits specified in this section or established as authorized in this code is lawful unless clearly proved to be in violation of the basic rule declared in Section 510 hereof.

" 'The prima facie limits referred to above are as follows and the same shall be applicable unless changed as authorized in this code, if so changed, then only when signs have been erected giving notice thereof, in which event the speed designated on the sign shall be the prima facie limit: Twenty-five miles per hour.

" ' (1) In a business or residence district.' . . .

"Conduct which is in violation of any of the statutes just read to you constitutes negligence per se. This means that if the evidence supports a finding, and you do find, that a person did so conduct himself, it requires a presumption that he or she was negligent. However, such presumption is not conclusive. It may be overcome by other evidence showing that under all the circumstances surrounding the event, the conduct in question was excusable, justifiable and such as might reasonably have been expected from a person of ordinary prudence."

A further instruction requested by defendants and given was that "the fact of having the right of way, if such be the fact, [does not] excuse one from the exercise of ordinary care to avoid causing an accident." At plaintiffs' request, an instruction on imminent peril was also given.[3]

The jury, midway in its deliberations, returned to the courtroom with a request that the instruction on imminent peril be reread, and the court thereupon again read "a group of instructions which" the jury were again told "should be con-

---

[3]The imminent peril instruction reads as follows:

"A person who, without negligence on his part, is suddenly and unexpectedly confronted with peril, arising from either the actual presence, or the appearance, of imminent danger to himself or to others, is not expected, nor required, to use the same judgment and prudence that is required of him, in the exercise of ordinary care, in calmer and more deliberate moments. His duty is to exercise only the care that an ordinarily prudent person would exercise in the same situation. If at that moment he does what appears to him to be the best thing to do, and if his choice and manner of action are the same as might have been followed by any ordinarily prudent person under the same conditions, he does all the law requires of him, although, in the light of after-events, it should appear that a different course would have been better and safer."

sidered together," including among others the imminent peril instruction and the instruction that "It is the duty of every person using a public highway, whether a pedestrian or the driver of any kind of vehicle, to exercise ordinary care at all times to avoid placing himself or others in danger and to avoid a collision" and that the duty of exercising ordinary care "continues even when one has the right of way over the other."

Another instruction given (but not re-read to the jury) was that even though a pedestrian is crossing outside a crosswalk and thus is obliged to yield the right of way to vehicles on the roadway the vehicle driver is not thereby relieved "from the duty to exercise due care for the safety of any pedestrian upon a roadway."

"Ordinary care" was defined to the jury as "that care which persons of ordinary prudence exercise in the management of their own affairs in order to avoid injury to themselves or to others."

It should be mentioned also that the court cautioned the jury that "If in these instructions, any rule, direction or idea be stated in varying ways, no emphasis thereon is intended by me, and none must be inferred by you. For that reason, you are not to single out any certain sentence, or any individual point or instruction, and ignore the others, but you are to consider all the instructions and as a whole, and to regard each in the light of all the others."

Plaintiffs, in support of their contention that instruction No. 201-E should have been given, rely upon *Dawson* v. *Lalanne* (1937), 22 Cal.App.2d 314 [70 P.2d 1002], in which a judgment in favor of defendant was reversed on the sole ground of error in failing to instruct the jury that "the plaintiff and the defendant were both chargeable only with the exercise of ordinary care, but a greater amount of such care was required of the defendant at the time of the accident in question by reason of the fact that he was driving and operating an automobile, which is an instrumentality capable of inflicting serious and often fatal injuries upon others using the highway." The court there declared that "This instruction clearly states the rule of law applicable to the facts of the case and has been approved in a number of cases," as follows: *Weihe* v. *Rathjen Mercantile Co.* (1917), 34 Cal.App. 302 [167 P. 287]; *Raymond* v. *Hill* (1914), 168 Cal. 473, 483 [143 P. 743]; *Vedder* v. *Bireley* (1928), 92 Cal.App. 52 [267 P. 724]; *Pinello* v. *Taylor* (1933), 128

Cal.App. 508, 514 [17 P.2d 1039]. Since the Dawson decision, *supra*, numerous other cases have approved instructions couched in substantially the same language (see *Whicker* v. *Crescent Auto Co.* (1937), 20 Cal.App.2d 240, 244 [66 P.2d 749]; *Broun* v. *Blair* (1938), 26 Cal.App.2d 613, 615 [80 P.2d 95]; *Martin* v. *Vierra* (1939), 34 Cal.App.2d 86, 93 [93 P.2d 261]; *McNear* v. *Pacific Greyhound Lines* (1944), 63 Cal.App.2d 11, 18-19 [146 P.2d 34]; *Kuist* v. *Curran* (1953), 116 Cal.App.2d 404, 406-408 [253 P.2d 281]; *Geisler* v. *Rugh* (1937), 19 Cal.App.2d 738, 742 [66 P.2d 671]; *cf.* *De Greek* v. *Freeman* (1930), 108 Cal.App. 645, 646 [291 P. 854]; *Morgan* v. *Los Angeles R. & G. Corp.* (1930), 105 Cal.App. 224, 231 [287 P. 152]), and others have approved the B.A.J.I. instruction No. 201-E which was here offered by plaintiff (see *Schulman* v. *Los Angeles Ry. Corp.* (1941), 44 Cal.App.2d 122, 128 [111 P.2d 924]; *Reed* v. *Stroh* (1942), 54 Cal.App.2d 183, 189 [128 P.2d 829]; *O'Brien* v. *Schellberg* (1943), 59 Cal.App.2d 764, 770 [140 P.2d 159]).

It is apparent that the intent of the instructions approved in the cited cases was to inform the jury that the elements of action constituting conduct which qualifies as ordinary care are those commensurable with the responsibility involved and depend upon the character of the instrumentality being used or the nature of the act which is being performed, all as related to the surrounding circumstances. If the particular instruction here requested by plaintiffs (No. 201-E) had consisted of only the first sentence thereof, which contains the expression "amount of caution," it perhaps would have been confusing to a jury. With the added explanation, however, set forth in the instruction, of the meaning of the quoted expression as related to the respective duties of driver and of pedestrian the instruction as a whole correctly states the law and explains that what is meant by varying amounts of caution is that the elements of conduct entering into ordinary care or caution will vary and must be related to the particular circumstances involved, including the character of the act being performed. Both in the instruction approved in *Dawson* v. *Lalanne* (1937), *supra*, 22 Cal.App.2d 314, and in the B.A.J.I. instruction here requested by plaintiffs the meaning intended to be conveyed is the same. Another effort to express such meaning is found in *Reed* v. *Stroh* (1942), *supra*, 54 Cal.App.2d 183, 189, stated as follows: "They [the instructions] require that both motorist and pedestrian exercise ordinary care; that the driver must be conscious of operating

an engine capable of immense and potential danger, and that the pedestrian must be conscious of the fact that he is in the midst of such dangers on the highway and guard against the possibility of injury apparent to a careful, prudent person."

Tested by the standards above stated, and the circumstances of this case, instruction No. 201-E correctly states the law and, as its subject matter was not specifically covered by other instructions, it should have been given. Before determining whether the failure to give such instruction was prejudicial it is proper to recall. that the trial court also refused, as above mentioned, to give plaintiffs' requested instruction No. 102-A, which states that the amount of caution required of the ordinary prudent person increases as does the danger that reasonably should be apprehended. Although refusing to give No. 102-A, the court at defendants' request instructed that "While . . . a pedestrian has a right to cross the road at any point . . . the law requires him to yield the right of way to all vehicles on the roadway so near as to constitute an immediate hazard . . . [and] the amount of caution required to constitute ordinary care increases as does the danger that a reasonably prudent person, in like position, would apprehend in the situation."

In view of the seeming emphasis thus placed by some of the instructions on the duties of the pedestrian, it is our view that the court might well have given plaintiffs' requested No. 102-A (which in its terms would apply to drivers as well as pedestrians) as well as No. 201-E. Such emphasis, however, is at most a relative matter and is something the appearance of which cannot always be avoided; it comes not from any misstatement of the law but from necessarily singling out the pedestrian in order to state accurately and fully the law applicable to any pedestrian under circumstances and in situations described in the evidence. Other instructions which in a like sense "emphasize" the duties of the operator of a motor vehicle were given. Such instructions are designed not to give unfair prominence to the obligations of the operator of a motor vehicle but to fully and fairly state the law applicable to any vehicle operator in the circumstances and situations described in the evidence. The fault in this case is not one of affirmative misstatement of any rule of law but of failure to explain more fully that in the application of the general rules of law which were correctly declared, the jury, as a matter of law, as well as factually in using common sense, good judgment and general knowledge, should recognize that

the force of inertia of a heavy, fast moving vehicle is greater than that of a comparatively light and slow moving pedestrian and that the respectively ensuing potentialities of harm and devolving responsibilities vary accordingly.

The close point in this case, if there is one, appears to us to depend on the interpretation of plaintiff's own conduct as established by her testimony. If such conduct can be reconciled with the standards of ordinary care imposed on a pedestrian crossing a roadway at a place other than an intersection or marked crosswalk it would seem to be on the theory of sudden confrontation with imminent peril. As pointed out above, the instruction on imminent peril was twice read to the jury. So also, the jury were instructed fairly as to the meaning of ordinary care and were cautioned that if "any rule, direction or idea" had been stated in varying ways, no emphasis thereon was intended, "none must be inferred by you," and "you are to consider all the instructions and as a whole, and to regard each in the light of all the others."

The rule is that "No judgment shall be set aside . . . on the ground of misdirection of the jury, or of the improper admission or rejection of evidence . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."[4] (Cal. Const., art. VI, § 4½; see, also, *Loper* v. *Morrison* (1944), 23 Cal.2d 600, 609 [145 P.2d 1]; *People* v. *De La Roi* (1944), 23 Cal.2d. 692, 703 [146 P.2d 225, 151 P.2d 837]; *Speck* v. *Sarver* (1942), 20 Cal.2d 585, 589 [128 P.2d 16]; *People* v. *Honeycutt* (1946), 29 Cal.2d 52, 62 [172 P.2d 698]; *People* v. *Sanchez* (1947), 30 Cal.2d 560, 575 [184 P.2d 673]; *Delzell* v. *Day* (1950), 36 Cal.2d 349, 351-352 [223 P.2d 625]; *Popejoy* v. *Hannon* (1951), 37 Cal.2d 159, 169 [231 P.2d 484].) The burden is on the appellant in every case to show that the claimed error is prejudicial; i.e., that it has resulted in a miscarriage of justice. (*Vaughn* v. *Jonas* (1948), 31 Cal.2d 586, 601 [191 P.2d 432].) Consideration of the entire cause, including the evidence as presented by the record, falls short of leading us to the opinion that failure to give the two numbered in-

---

[4]For illustrations or definitions of what may constitute a miscarriage of justice, see *People* v. *Hall* (1926), 199 Cal. 451, 458 [249 P. 859]; *People* v. *Putnam* (1942), 20 Cal.2d 885, 892 [129 P.2d 367]; *People* v. *Rogers* (1943), 22 Cal.2d 787, 807 [141 P.2d 722]; *People* v. *Dail* (1943), 22 Cal.2d 642, 650 [140 P.2d 828]; *Daniels* v. *City & County of San Francisco* (1953), 40 Cal.2d 614, 624 [255 P.2d 785]; *Delzell* v. *Day*, (1950), 36 Cal.2d 349, 351-352 [223 P.2d 625].

structions has resulted in a miscarriage of justice; hence, any error in refusing to give them does not appear to be prejudicial and does not justify reversal of the judgment.

For the reasons above stated the judgment is affirmed.

Gibson, C. J., Shenk, J., Traynor, J., and Spence, J., concurred.

Edmonds, J., concurred in the judgment.

CARTER, J.—I dissent.

I am of the opinion that it was prejudicial error to admit evidence of the "average speed" traveled by vehicles in the area of the accident in view of the testimony showing that the area in question was posted with 25-mile-an-hour speed limit signs. It has been held numerous times by this court and by appellate courts of this state that the question of negligence, or lack of negligence, is not to be determined by what others did or did not do at the time and place under the particular facts and circumstances then and there confronting them, including the important and undisputed factor here that there was a pedestrian in the street. In *Rudd* v. *Byrnes*, 156 Cal. 636, 642 [105 P. 957, 20 Ann.Cas. 124, 26 L.R.A.N.S. 134], it was held that "The standard of care required of persons under given circumstances is not to be established by proof that others have been in the habit of acting in a certain manner." In *Phoenix Assur. Co.* v. *Texas Holding Co.*, 81 Cal.App. 61, 74-75 [252 P. 1082], it was held "That a mere custom or usage cannot make due care out of conduct that is in fact negligence under the circumstances disclosed by the evidence has been stated a number of times by the courts of this state, as well as of other states. . . . the specific practice of others cannot be admitted in testimony as an excuse for the alleged negligent act of the defendant." And in *Robinet* v. *Hawks*, 200 Cal. 265, 274 [252 P. 1045], it was held that ". . . the doctrine of customary usage does not, to our knowledge, apply to the question of legal duty under the law of negligence. In *Perry* v. *Angelus Hospital Assn.*, 172 Cal. 311, 315 [156 Pac. 449], we say: 'We know of no authority for the proposition that by continuing in a careless performance of duty a party transforms its negligence into due care. (*Silviera* v. *Iverson*, 125 Cal. 266 [57 Pac. 996].)'" In *Sheward* v. *Virtue*, 20 Cal.2d 410, 414 [126 P.2d 345], it was held: "Assuming that other manufacturers likewise made no special examination to discover fractures such a custom would

not excuse the failure of these appellants. A somewhat similar contention was rejected in the case of *Hughes* v. *Warman Steel Casting Co.*, 174 Cal. 556, 561 [163 Pac. 885]. In *Robinet* v. *Hawks*, 200 Cal. 265, 274 [252 Pac. 1045], this court said that the doctrine of customary usage does not apply to the question of legal duty under the law of negligence, or that the continuance of a careless performance of a duty would transform a party's negligence into due care." In *People* v. *Crossan*, 87 Cal.App. 5, 16 [261 P. 531], it was held that " 'The standard of care required of persons under given circumstances is not to be established by proof that others have been in the habit of acting in a certain manner.' " See, also, *Wolfsen* v. *Wheeler*, 130 Cal.App. 475, 482-484 [19 P.2d 1004] ; *Carroll* v. *Central Counties Gas Co.*, 96 Cal.App. 161, 165-166 [273 P. 875].

*Fowler* v. *Key System Transit Lines*, 37 Cal.2d 65, 68 [230 P.2d 339], relied upon by a majority of this court to support the determination that evidence of custom was properly admitted in the case at bar, involved an entirely different situation. There, the court, citing *Adamson* v. *San Francisco*, 66 Cal.App. 256 [225 P. 875], said: "Where . . . a usual practice or custom has obtained, and . . . *the claim is made that one of the parties has, to the discomfiture of the other, without notice, departed from the usual custom or practice,* [emphasis added] the courts have by an unbroken line of decisions held that the *question of negligence on the part of the defendant, and the question of contributory negligence on the part of the plaintiff,* are both questions for the jury to determine in the light of all of the facts, *including the evidence tending to establish the alleged deviation therefrom."* In the Fowler case, it had been alleged that the passenger had been injured while stepping from a bus which had not stopped at its customary stopping place. In *Ross* v. *San Francisco-Oakland T. R. Co.*, 47 Cal.App. 753, 766 [191 P. 703], relied on in the Fowler case, the court said: "The settled practice of stopping a street-car at a particular place becomes a rule of conduct upon which the public has a right to rely to a reasonable extent, and a departure from such rule is a vitally important element in determining the question of negligence, for it constitutes a departure from the standard of safety which the defendant itself has adopted." The majority here rely upon *Muir* v. *Cheney Bros.*, 64 Cal.App.2d 55 [148 P.2d 138], as it was cited in the Fowler case. The Muir case also involved a deviation from the normal method of travel on a

certain portion of highway which was "difficult of description." The evidence was offered to show the method in which most vehicles negotiated a turn on an intersection in the shape of an arc. It was offered to show the jury the full set of circumstances surrounding the accident in question.

In support of the rule stated in the Muir case, and restated by the majority here, several cases are cited but none of them is in point. For example, in *Hatzakorzian* v. *Rucker-Fuller Desk Co.*, 197 Cal. 82 [239 P. 709, 41 A.L.R. 1027], a pedestrian was struck by an automobile driven by an employee of the defendant. The defendant alleged that the deceased met his death through his own contributory negligence. No custom was involved. Testimony regarding statements made by the deceased prior to his death were held admissible so as to disclose "that the deceased had in his mind and fully realized, as he was walking along or over the highway just before he was struck, the perils or dangers of walking over the highway in the darkness of night, and further tended to show that, while thus engaged, he was exercising due care for his own safety." Another case is that of *Dewees* v. *Kuntz*, 130 Cal.App. 620 [20 P.2d 733], where no evidence of custom was involved. The court there, in explaining the general rules governing the care to be used by the driver of an automobile summarized, in part, by saying: "In some cases the evidence may justify a conclusion that he had actual knowledge of the danger of collision; in others it may be concluded from the attendant circumstances that the defendant was advised of the peril, but in a less degree. If it appears that the defendant omitted to take a precautionary measure which was prescribed by law or usage, the imputation is that he must have had knowledge of the danger." In *Mace* v. *Watanabe*, 31 Cal.App.2d 321 [87 P.2d 893], the trial court, over objection, permitted a traffic officer to testify that it was the general custom and habit of motorists to travel the roadway along each leg of the "Y" rather than to use the soft gravel forming the "V" of an intersection. This was offered to show that each leg of the "Y" constituted a well-traveled roadway and that the "V" did not constitute such a roadway. It was there said that there was no error in the admission of such testimony since "This evidence was not like that offered in *Hurtel* v. *Albert Cohn, Inc.*, 5 Cal.(2d) 145 [52 Pac.(2d) 922], to show the habit of pedestrians to violate traffic signals maintained for their protection. . . . The evidence showed that the county had constructed and maintained

these two separate approaches, and the further evidence that they were commonly used as such by all motor traffic was material to respondents' case." In *Scott* v. *Gallot,* 59 Cal. App.2d 421, 426 [138 P.2d 685], it was held that evidence of custom which was a *safety measure* was admissible because it was not evidence of a custom which was *negligent.*

Here the evidence of custom showed negligence—that of exceeding the posted speed limit in the area and that evidence could only have been considered by the jury to excuse any negligence on the part of the defendant.

The law is well settled that mere custom or usage cannot make due care out of conduct that is in fact negligence under circumstances disclosed by the evidence (*Phoenix Assur. Co.* v. *Texas Holding Co., supra,* 81 Cal.App. 61; *Rudd* v. *Byrnes, supra,* 156 Cal. 636; *Anstead* v. *Pacific Gas & Elec. Co.,* 203 Cal. 634 [265 P. 487]; *Perry* v. *Angelus Hospital Assn.,* 172 Cal. 311 [156 P. 449]; *Robinet* v. *Hawks, supra,* 200 Cal. 265; *Carroll* v. *Central Counties Gas Co., supra,* 96 Cal.App. 161; *Mehollin* v. *Ysuchiyama,* 11 Cal.2d 53 [77 P.2d 855]; *Sheward* v. *Virtue, supra,* 20 Cal.2d 410]; *People* v. *Crossan, supra,* 87 Cal.App. 5; *Wolfsen* v. *Wheeler, supra,* 130 Cal. App. 475; *Sanford* v. *Moreau,* 249 App.Div. 915 [292 N.Y. Supp. 595]; 61 C.J.S. 271).

Plaintiffs' offer of proof that plaintiff wife knew of a custom of crossing San Fernando Road at the point of the accident was refused by the trial court. The offer of proof consisted of this: "If this witness were allowed to answer, she will testify that she had been crossing in this same crosswalk area since she first became employed there in 1945, and when she first came to work there were white lines painted across the pavement of San Fernando Road; that there have always been these metal—— There have always been metal strips across the road; that she, even in company with many other employees and patrons of the Riverview Laundry had crossed there; that she had seen many, many persons cross in that particular area right up to the time of the accident, and she herself as I say, has crossed there to take the streetcar, as she was doing this morning." While the offer of proof was somewhat inartistically phrased, the meaning is clear. Plaintiffs sought to prove that the particular crossing space had formerly been a marked crosswalk and that since the San Fernando Road had been resurfaced and the white lines obliterated, it had by reason of custom become an unmarked crosswalk. We find in the record that one of defendants'

instructions told the jury in a negative manner that if a pedestrian crosses at a point other than within a marked crosswalk or *within an unmarked crosswalk* at an intersection, the law requires him to yield the right of way. Stated affirmatively, the law requires a *motorist* to yield the right of way to a pedestrian crossing within a marked or unmarked crosswalk. Section 560(a) of the Vehicle Code provides: "The driver of a vehicle shall yield the right of way to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at an intersection, except as otherwise provided in this chapter." Had the evidence been admitted, the jury would have been properly instructed since the instruction as given was substantially in the language of the section. Without the evidence, the instruction was meaningless and pointless. The evidence would have shown that by custom the point in question was an unmarked crosswalk giving plaintiff wife the right of way. Such evidence was not only admissible but material to plaintiffs' case. Its exclusion was clearly prejudicial.

I am also of the opinion that the failure to give plaintiffs' instruction 201-E constituted prejudicial error. It is admitted in the majority opinion that the requested instruction correctly states the law; that its subject matter was not covered by other instructions and that it should have been given. In the majority opinion, it is then pointed out that the trial court also failed to give plaintiffs' instruction No. 102-A. No. 201-E would have told the jury that "While it is the duty of both the driver of a motor vehicle and a pedestrian, using a public roadway, to exercise ordinary care, that duty does not require necessarily the same amount of caution from each. The driver of a motor vehicle, when ordinarily careful, will be alertly conscious of the fact that he is in charge of a machine capable of projecting into serious consequences any negligence of his own. Thus his caution must be adequate to that responsibility as related to all the surrounding circumstances. A pedestrian, on the other hand, has only his own physical body to manage and with which to set in motion a cause of injury. While, usually, that fact limits his capacity to cause injury, as compared with a vehicle driver, still, in exercising ordinary care, he, too, will be alertly conscious of the mechanical power acting, or that may act, on the public roadway, and of the possible serious consequences from any conflict between himself and such forces. And the caution required of him is measured by the possibilities of injury

apparent to him in the conditions at hand, or that would be apparent to a person of ordinary prudence in the same position." Plaintiffs' instruction No. 102-A would have told the jury that "Inasmuch as the amount of caution used by the ordinary prudent person varies in direct proportion to the danger known to be involved in his undertaking, it follows that in the exercise of ordinary care the amount of caution required will vary in accordance with the nature of the act and the surrounding circumstances. To put the matter in another way, the amount of caution required by law increases as does the danger that reasonably should be apprehended." Numerous cases are cited in the majority opinion to the effect that instruction No. 201-E is a correct statement of the law. For some peculiar reason, best known only to a majority of this court, defendant's instruction that "While . . . a pedestrian has a right to cross the road at any point . . . the law requires him to yield the right of way to all vehicles on the roadway so near as to constitute an immediate hazard . . . [and] the amount of caution required to constitute ordinary care increases as does the danger that a reasonably prudent person, in like position, would apprehend in the situation" is quoted. It is then admitted that there has been a "seeming" emphasis placed on the duties of a pedestrian and that "it is our view" that the court might well have given plaintiffs' requested No. 102-A "as well as No. 201-E." *But* despite these admissions of error and "seeming" favoritism to the defense, it is concluded that no prejudice was suffered by plaintiffs. Or, at least, not enough error to constitute a miscarriage of justice because a different verdict "would have been improbable." I say that a different verdict would have been *most* probable had these errors not occurred.

In failing to give plaintiffs' two requested instructions and in giving those requested by defendant, the trial court weighted the scales in favor of the defendant by placing a greater burden of care on a pedestrian than that which the law imposes and relieved the motorist of the responsibility which has been imposed on him. We are told in the majority opinion, that "Although, as mentioned, some of the instructions hereinabove quoted appear to emphasize the duties of a pedestrian who essays to cross a thoroughfare at a point other than an intersection or marked crosswalk, such emphasis is at most a relative matter and is something the appearance of which cannot always be avoided. *The emphasis comes not*

*from any misstatement of the law but from necessarily singling out the pedestrian in order to state accurately and fully the law applicable to any pedestrian under circumstances and in situations described in the evidence.''* (Emphasis added.) There was no necessity of *singling* out the pedestrian. Had plaintiffs' requested instructions been given, a fair trial would have been more likely. Had the instructions been given (and it must be remembered that concededly they correctly stated the law and *should* have been given) the other errors complained of would not have been nearly so pernicious. Under the facts of this case, it may readily be seen that, first, in admitting evidence of a so-called custom of evading the law and exceeding the speed limit (with which practice plaintiff wife was supposedly familiar) the jury were, in effect, told that plaintiff wife was pretty stupid in crossing at that particular point where all cars were going too fast. In the refusal to give her instructions, confusion was compounded by placing a greater duty of care on her, as a pedestrian, than on the one driving a mechanical contrivance capable of inflicting great bodily injury. These two errors, added to the refusal to admit plaintiffs' evidence of a custom of all pedestrians to cross at an unmarked crosswalk (which had been previously a marked crosswalk and which was to be, again, a marked crosswalk) could have had but one result: that of impressing upon the jury that plaintiff wife had a tremendous duty of care for her own person in crossing a highway upon which cars were known to exceed the speed limit and that in failing to take all these things into consideration she was guilty of contributory negligence which proximately caused her injuries. We are told that instructions which ''seemed'' to emphasize the duties of the operator of a motor vehicle were given ''not to give unfair prominence to the obligations of the operator of a motor vehicle but to fully and fairly state the law applicable to any vehicle operator in the circumstances and situations described in the evidence. The fault in this case is not one of affirmative misstatement of any rule of law but *of failure to explain more fully that in the application of the general rules of law which were correctly declared, the jury, as a matter of law, as well as factually in using common sense, good judgment and general knowledge, should recognize that the force of inertia of a heavy, fast moving vehicle is greater than that of a comparatively light and slow moving pedestrian and that the respectively ensuing potentialities of harm and devolving re-*

*sponsibilities vary accordingly.*" (Emphasis added.) Error is admitted; the instructions should have been given; so prejudice resulted. It is elemental that the jury determines the facts and renders its verdict *under the proper principles of law.* How is a body, composed of laymen untrained in the law, to make a correct determination and come to the right conclusion when it has not been *fully and fairly* instructed as to the proper principles of law? The majority of this court, whose signatures appear there, would be the first to cry with horror that a jury must *not* be allowed, unaided by instructions on the applicable law, to decide which one of two opposing parties was guilty of either negligence or contributory negligence. In fact, normally, juries are considered so unreliable in their factual determinations that a majority of this court would substitute itself for those august bodies and take even the most minute factual determination upon itself. Yet here, a jury is permitted to make a determination (and a majority of this court affirms that determination) unaided by the proper instructions. The result achieved in this case brings home the truth of the saying that "there *ought* to be a closed season on us pedestrians"!

The discussion in the majority opinion as to the nonprejudicial character of the errors committed by the trial court in this case is meaningless. Some errors are conceded. The prejudicial character of any error is purely a matter of opinion. While the majority does not hold that it was error to admit evidence of custom as to the speed of automobiles at the place where the accident occurred or exclude the testimony offered by plaintiff relative to the custom of pedestrians to cross the street at that point it is conceded that the jury was erroneously instructed relative to the respective duties and responsibilities of pedestrians and operators of motor vehicles. From my examination of the record in this case I do not believe it can fairly and honestly be said that if the errors in question had not been committed a different result would have been improbable. On the other hand, I think it highly improbable that the same result would be obtained upon a new trial free from the errors here shown. For this reason I believe the errors were prejudicial, and I would therefore reverse the judgment and direct that a new trial be had.