[Civ. No. 11722. First Dist., Div. Two. Feb. 5, 1942.]

HAL A. BELYEW, Plaintiff and Respondent, v. UNITED PARCEL SERVICE OF OAKLAND (a Corporation) et al., Appellants; CITY OF OAKLAND, Intervener and Respondent.

Hoge, Pelton & Gunther and A. Dal Thomson for Appellants.

Nathan Goldwater and Leo Murcell for Plaintiff and Respondent.

F. Bert Fernhoff, City Attorney, and John W. Collier, Assistant City Attorney, for Intervener and Respondent.

SPENCE, J.—Plaintiff, a sergeant of police employed by the city of Oakland, sought damages for injuries sustained by him in an accident alleged to have been caused by the negligence of defendants. The city of Oakland filed its complaint in intervention seeking the damages which it had sustained by reason of said accident. A jury trial was had and a verdict was returned awarding damages to plaintiff in the sum of $2,460 and awarding damages to plaintiff in intervention in the sum of $3,702.63. Both plaintiff and plaintiff in intervention were dissatisfied with the amounts awarded. Both made motions for a new trial and an order was made by the trial court granting said motions ''upon the ground of the insufficiency of the evidence to sustain the verdicts rendered in the above entitled action.'' Defendants appeal from said order.

At the opening of the trial, defendants admitted liability and no question of liability is presented on this appeal. The briefs of the parties are devoted entirely to a discussion of the extent of the damages suffered and a discussion of the question of the propriety or impropriety of the trial court's order granting a new trial because of the alleged inadequacy of the damages awarded.

At the outset, it should be stated that when a trial court grants a motion for a new trial because of the inadequacy of the damages awarded, it acts upon the broad ground of the ''Insufficiency of the evidence to justify the verdict'' (Code of Civil Procedure, section 657, subd. 6), and its power to grant such motion is not limited to those cases in which the amount awarded is so inadequate that it shocks the conscience and raises an inference of passion or prejudice on the part of the jury. (*Hoffart* v. *Honig*, 41 Cal. App. (2d) 271 [106 Pac. (2d) 630]; *Hoffmann* v. *Lane*, 11 Cal. App. (2d) 655 [54 Pac. (2d) 477]; *Peri* v. *Culley*, 119 Cal. App. 117 [6 Pac. (2d) 86].) On the contrary, it is the duty of the trial

court in considering such motion to weigh the evidence, to exercise its independent judgment and to grant a new trial if it clearly appears to the trial court from the evidence believed by it that the damages awarded were inadequate. (*Peri* v. *Culley, supra;* see also *Fisher* v. *Zimmerman,* 23 Cal. App. (2d) 696 [73 Pac. (2d) 1243]; *Green* v. *Soule,* 145 Cal. 96 [78 Pac. 337].) If the motion is granted, the only question presented on an appeal from the order granting such motion is the question of whether the trial court abused its discretion in determining that the damages awarded were inadequate. (*Sanford* v. *Wilcox,* 13 Cal. App. (2d) 193 [56 Pac. (2d) 548].)

 Defendants' argument in support of their contention that the order should be reversed is based upon the premises that plaintiff's injuries were slight; that plaintiff was a malingerer; that he recovered sufficiently so that he might have returned to work long before the trial; that his failure to return to work constituted a ''deliberate endeavor to make his injury appear more serious''; and that his continued absence from his duties was wholly unjustified. While there was some conflict in the evidence relating to the nature and extent of plaintiff's inquiries, the evidence most favorable to plaintiff shows that none of said premises adopted by defendants can be accepted by this court on this appeal from the order granting a new trial.

Prior to the time that the accident occurred, plaintiff was a healthy, able-bodied man of the age of 43 years. He was injured on August 10, 1939. He had stopped his car at an intersection awaiting the change of traffic signals. While his car was so standing, it was struck violently from the rear by the truck of the defendants. The force of the impact violently snapped his head back and his main injury was an injury to the upper spinal region. The exact nature of this injury was difficult to ascertain because of the difficulty encountered in obtaining satisfactory x-ray pictures in that region. As the immediate result of the impact, plaintiff was dazed; he experienced great, pain all along the spine and particularly across the back of the neck and across the shoulders; and he temporarily lost control of his arms and experienced a tingling sensation and numbness in his arms. He was taken to the hospital in an ambulance and he remained there for 21 days. Boards were placed under his body and traction

was applied to stretch his neck by attaching apparatus under his chin and applying a fifteen-pound weight over a pulley. He was forced to lie flat on his back for eighteen days in traction, during which time he suffered great pain and was unable to get much sleep. Thereafter a large cast was applied for the purpose of pushing his chin up and out in order to stretch the neck. He insisted on going home but he carried the cast for a month and thereafter he wore a steel brace for many months and until shortly before the trial.

Treatments continued two or three times per week after plaintiff left the hospital, including stretching treatments, manipulation of the head and stretching of the spine, which treatments were very painful. There were approximately sixty such treatments as well as deep massage and heat treatments. In the early part of 1940, the doctors advised occupational therapy and he attempted to return to work. This attempt lasted but 2½ days and he was unable to continue. He was in a very nervous condition, and the doctors advised plaintiff to go away. He did so and did engage in light work assisting the carpenters around the house in order to tone up his muscles.

The trial was held approximately fifteen months after the accident. He was still disabled and expressed a willingness to undergo any treatment to get relief, including the recommended Skeletal treatment. At that time, his head was still forced into such a position that it was held toward his right shoulder with his chin pointed toward the left. He could not turn his head to the left beyond the mid line. Plaintiff testified that at that time his legs and arms were as good as ever, except for a numbness in the inner arm, but that in attempting to raise his right arm above his shoulder, a catch came in his neck; that he still experienced almost continuous pain and had not been relieved of pain since the accident; that he suffered pain at night and had not averaged four hours' sleep a night in fifteen months; that he had a continuous ringing through his head and a continuous pain at the base of his skull; that he also suffered pain through his spine at the level of the bottom of his arm pits; that any motion of his head was very painful; and that when he was able to get to sleep, any rolling over caused such pain and shock that he was awakened.

The doctors who had treated plaintiff substantiated the foregoing testimony and described in detail their findings and

treatment. They described plaintiff's main injury as a sprain of the cervical spine of considerable severity, evidenced by muscle spasm and marked edema. It was suspected that there had been some fracture or dislocation and numerous x-rays were taken. The doctors had never been able to determine definitely whether there was such fracture or dislocation because the region of the spine affected was an exceedingly difficult region in which to take x-rays. It appeared that the failure of plaintiff's injuries to respond more rapidly to the treatment given indicated that Skeletal treatment should be applied. This treatment involves traction applied by the use of calipers with very sharp points inserted in the outer table of the skull. In plaintiff's case the recommended treatment would involve about four weeks of hospitalization and about four or five months' treatment thereafter. The doctors did not feel absolutely certain that this treatment would bring plaintiff back to normal but they apparently felt reasonably certain and felt that plaintiff could return to work in about six to eight months after the commencement of such treatment.

We believe that the foregoing summary of the evidence is sufficient to show that plaintiff suffered a severe, painful and disabling injury which had not responded well to the treatment given; that further treatment was required to restore plaintiff to normal; and that even with such further treatment there still remained some doubt concerning the results thereof. As above stated, the award made to plaintiff himself was in the sum of $2,460. The award made in favor of plaintiff in intervention was $3,702.63. The last-mentioned amount covered the exact amount expended by plaintiff in intervention up to the time of trial for wages paid to plaintiff, for medical and hospital fees paid for services to plaintiff, and for repairs to its automobile. It did not cover any allowance for further treatment of plaintiff or for wages during any further period of disability. We believe it is clear from what has been said that this court may not hold that the trial court abused its discretion in determining that the damages awarded were inadequate.

The order granting a new trial is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.