[Civ. No. 12523. First Dist., Div. One. Feb. 24, 1944.]

MILLER McNEAR, Respondent, v. PACIFIC GREYHOUND LINES (a Corporation) et al., Appellants.

Cooley, Crowley & Supple for Appellants.

John Elliott Cook for Respondent.

DOOLING, J. pro tem.—After a verdict for $8,200 for personal injuries the plaintiff made a motion for new trial limited to the issue of damages alone and the defendants moved for a new trial on all issues. The trial court denied defendants' motion for new trial and granted a new trial limited to the issue of damages pursuant to .the plaintiff's motion. From the order so made the defendants appeal.

Appellants argue that the evidence is not sufficient to support the verdict in two particulars: 1. That it fails as a matter of law to sustain a finding of appellants' negligence; and 2. That it establishes as a matter of law respondent's contributory negligence.

The evidence shows that respondent, McNear, on the night of the accident was taking a load of furniture from San Francisco to his home in Marin County. A friend, Mrs. Plunkett, talked to him in front of her apartment in San Francisco at about 9:40 p. m. that night. His light Ford truck was then loaded with furniture. The accident occurred at about 10:40 p. m. At 10:30 p. m. respondent had telephoned to his wife and after the accident his Ford truck with its load of furniture was found parked at the side of the road about 750 feet away from the scene of his injuries with its gas tank

14

empty. These facts, sketchy though they are, were all that were produced concerning respondent's movements before the accident, because by reason of brain injury respondent has lost all memory of events occurring during the period of at least three days immediately preceding his injury.

Respondent was struck by a Greyhound bus bound from San Francisco to Fairfax and driven by the appellant Wade. The accident occurred on the 101 Highway at a point about two miles south of the Tiburon "Y." The night was clear and visibility good. The headlights of the bus were on high beam and illuminated not only the road ahead but the shoulder and dirt on the right side of the highway. There were no other automobiles in sight. The driver felt the impact of the bus striking respondent but at no time saw him until after he had stopped the bus and gone back to the point where he was lying, entirely off the highway, with his head six feet from the edge of the pavement. The impact was with the right headlight near the right front corner of the bus and the witness Fairfax, a passenger on the bus, testified that the bus had been traveling on the outer part of the outside lane and just before the impact "there was a veering of the bus to the right." "It looked to me as though we were going right into the guard rail. . . . The guard rail came into my vision suddenly, and at the same time the guard rail came into my vision, there was an impact." A rule of the respondent required its bus drivers to stop to take on passengers at any time signaled except within the incorporated limits of a city.

■ The evidence above outlined is ample to support the implied findings of appellants' negligence and respondent's freedom from contributory negligence. The jury could hardly fail to find appellants negligent. The driver on a straight road well lighted both in front and to the side by his headlights on a clear night and with no other traffic on the highway, struck respondent with the right front corner of his bus without ever seeing him. No more need be said on that subject.

■ On the subject of contributory negligence appellants point to the testimony of one witness produced by appellants, Mrs. Rutledge, a passenger on the bus, who testified that just before the impact a figure moved into the path of the bus and that she did not see its face. This is the only witness who testified seeing respondent before the impact. From this

testimony appellants argue that respondent must have stepped in front of the bus while walking with his back to it. The evidence was not such as to compel the jury to reach this conclusion. Respondent by reason of his loss of memory was unable to testify to any of the events preceding the impact of the bus with his body. He produced no witness who could do so. He was entitled to the benefit of the presumption that he was taking ordinary care for his own safety. (*Satariano* v. *Sleight*, 54 Cal.App.2d 278, 281 [129 P.2d 35]; *Hoppe* v. *Bradshaw*, 42 Cal.App.2d 334, 339-340 [108 P.2d 947]; *Scott* v. *Sheedy*, 39 Cal.App.2d 96, 101 [102 P.2d 575].) Added to this presumption was the testimony of Fairfax that the bus veered to the right just before the impact. The jury was entitled to weigh the evidence of Fairfax with that of Mrs. Rutledge and might reasonably conclude that the bus did veer to the right as testified by Fairfax and that the sudden appearance of respondent in front of the right front corner of the bus gave Mrs. Rutledge the impression that respondent moved into its path. Her failure to see his face was readily explainable by her testimony that the whole occurrence took no longer than the snapping of one's fingers. Appellants' attempt to argue the weight of conflicting evidence is futile before an appellate court.

The special damages amounted to $3,108.62. This left an amount exceeding $5,000 referable to general damages. Appellants cite *Keogh* v. *Maulding*, 52 Cal.App.2d 17 [125 P.2d 858]; *Chinnis* v. *Pomona Pump Co.*, 36 Cal.App.2d 633 [98 P.2d 560]; *Wallace* v. *Miller*, 26 Cal.App.2d 55 [78 P.2d 745]; *Bencich* v. *Market St. Ry. Co.*, 20 Cal.App.2d 518 [67 P.2d 398]; and *Schuerholz* v. *Roach*, 58 F.2d 32, in support of their claim that the trial court erred in granting a new trial on the issue of damages alone.

The right to grant a new trial on this single issue is well settled. The only limitation imposed on the trial court in this particular by the cases cited by appellants is that it is an abuse of discretion to limit a new trial to the issue of damages when the amount awarded by the jury is so small in view of the damages proved that it must be concluded that the verdict is the result of some of the jurors sacrificing their conscientiously held view that the defendant was not liable and agreeing to a small but inadequate award for the plaintiff in order to arrive at some verdict. The whole subject is

fully discussed and the earlier California cases analyzed in *Hughes* v. *Schwartz,* 51 Cal.App.2d 362 [124 P.2d 886]. At page 368 of that opinion this court announced its conclusion that "where, as in the instant case, a substantial but inadequate award of general damages is made, the question as to whether the new trial should be limited rests within the discretion of the trial judge." (*Cf. Cox* v. *Tyrone Power etc. Inc.,* 49 Cal.App.2d 383, 390 [121 P.2d 829].)

An award in excess of $5,000 for general damages must be regarded as substantial. A comparison of the awards made in the cases relied upon by appellants with the verdict in this case affords ready demonstration that none of them were at all comparable to the award made herein. In *Keogh* v. *Maulding, supra,* page 18, the jury allowed $291.23 for general damages in a case where "it is undisputed that the injuries are permanent. The tibia and fibula had been fractured, and the tibia, which had failed to unite, required further surgery of a major character." In *Chinnis* v. *Pomona Pump Co., supra,* the appellate court exercised its discretion to order a new trial on all issues as to one plaintiff. The jury had awarded her $750 for serious, and in part permanent, injuries described on page 642. The amount was obviously trifling for the injuries incurred. In *Wallace* v. *Miller, supra,* the verdict was for $120.25, the exact amount of the plaintiff's hospital and doctor bills. The jury allowed nothing for general damages and failed to include a stipulated item of $203.64 for damage to plaintiff's automobile. In *Bencich* v. *Market St. Ry. Co., supra,* at page 522, the court said of the award of $5,000 that "it is patent that at the very most the amount awarded by the jury barely, if at all, repays appellant his special damages." In *Schuerholz* v. *Roach, supra,* the jury allowed plaintiff only $625 for the loss of an eye.

In the case before us the extent and permanency of respondent's disability was sharply disputed. One medical witness testified that by reason of brain damage the respondent would never be able to pursue a gainful occupation again. Another testified that the symptoms of his brain injury should gradually disappear and within six months to a year he will probably be able to go back to his regular work. One medical witness testified that the injuries to his scapula were such that he could never do sustained lifting. Another testified that while he may have some permanent disability in his shoulder "I think he can use his shoulder all right." Under the evi-

dence we cannot hold that in allowing over $5,000 for general damages the jury did not in good faith award what they considered an adequate compensation for the injuries as they found them.

In passing on a motion for new trial on the ground that the damages awarded are inadequate the trial judge is entitled to reweigh the evidence and exercise his independent judgment thereon and if he concludes that the damages proved are not adequately compensated by the amount awarded he may grant a new trial on that ground. (*Belyew* v. *United Parcel Service*, 49 Cal.App.2d 516, 518-9 [122 P.2d 73]; *Hoffart* v. *Honig*, 41 Cal.App.2d 271, 274 [106 P.2d 630]; *Cunha* v. *Lewis*, 31 Cal.App.2d 1 [76 P.2d 1198]; *Reilley* v. *McIntire*, 29 Cal.App.2d 559, 562-3 [85 P.2d 169]; *Hoffmann* v. *Lane*, 11 Cal.App.2d 655, 658 [54 P.2d 477]; *Peri* v. *Culley*, 119 Cal.App. 117, 119, 121 [6 P.2d 86].) We must conclude that the trial judge in reweighing the evidence on the motions for new trial decided that the jury correctly determined from the evidence that appellants were liable and the respondent entitled to damages against them for the injuries incurred, that the amount of the verdict was not the result of a compromise reached by some of the jurors surrendering their convictions that appellants were entitled to a verdict in exchange for a reduction of the amount of damages, but that the amount awarded was none the less inadequate to compensate the plaintiff for the injuries actually received. There is ample evidence in the record, if believed by the trial judge, to support all of these conclusions.

Appellants, in an attempt to prove the award of over $5,000 for general damages so palpably inadequate as to demonstrate that it must be the result of some of the jurors compromising their views of nonliability, suggest that the $5,000 plus must have been awarded either to cover the cost of a further operation on the injured scapula or the loss of respondent's earnings from the time of injury to the date of trial or both. In making this argument appellants enter the field of pure speculation. The only physician to testify concerning the possibility of a further operation on the scapula expressed the opinion that it was too late for such an operation to improve the function of the arm and shoulder and that he would only advise its being performed if it developed that it should become necessary at some time in the future for the

relief of pain. No evidence was produced as to the cost of such operation if performed. Respondent was the owner of a dairy which had occupied his full time in its operation and no amount of earnings lost was either proved or prayed for, nor was the jury given any instruction upon that subject.

The trial court gave the following instruction at the request of the respondent: ''The amount of care required of the defendant Wade as the driver of a motor vehicle along a public highway was far greater than the amount of care exacted from Miller McNear as a pedestrian. The driver of a motor vehicle is in charge of a dangerous instrumentality capable of inflicting serious and often fatal injuries, and for that reason he is charged by law with a greater amount of care than the pedestrian.''

■ Both the driver and the pedestrian are bound to use the same degree of care. Each is bound to the duty of using the care of a person of ordinary prudence acting under the same or similar circumstances, but it is well settled that the amount or quantum of care necessary to reach the standard or degree of ordinary care is greater in the case of the operator of a motor vehicle than in the case of a pedestrian (*De Greek* v. *Freeman*, 108 Cal.App. 645 [291 P. 854]; 2 Cal. Jur., Ten-year Supp., 366-7) and it has been held to be reversible error for the trial court to refuse to so instruct the jury. (*Dawson* v. *Lalanne*, 22 Cal.App.2d 314 [70 P.2d 1002]; *Brown* v. *Blair*, 26 Cal.App.2d 613 [80 P.2d 95].)

Appellants, while conceding this rule, attack the instruction on two grounds: 1. That it was prejudicial error to instruct the jury that the amount of care required of the driver of the motor vehicle was *far* greater than the amount of care exacted of the pedestrian; and 2. That it was prejudicial error to characterize a motor vehicle as a dangerous instrumentality. ■ An instruction that the amount of care required of the driver is *far* greater than the amount of care required of a pedestrian has been approved more than once by the appellate courts of this state (*Weihe* v. *Rathjen Mercantile Co.*, 34 Cal.App. 302, 305 [167 P. 287]; *Morgan* v. *Los Angeles R. & G. Corp.*, 105 Cal.App. 224, 231-2 [287 P. 152]; *Pinello* v. *Taylor*, 128 Cal.App. 508, 514 [17 P.2d 1039]) and the same language has been used to describe the amount of care required of the operator of a motor vehicle in other cases. (*Raymond* v. *Hill*, 168 Cal. 473, 483 [143 P. 743];

*De Greek* v. *Freeman, supra; Dawson* v. *Lalanne, supra.*)
The characterization of an automobile in similar instructions
as "a dangerous instrumentality capable of inflicting seri-
ous and often fatal injuries," "serious injuries and death"
or "severe injuries" has been held not to constitute reversible
error in *Martin* v. *Vierra,* 34 Cal.App.2d 86, 93 [93 P.2d
261]; *Del Carlo* v. *Oberti,* 2 Cal.App.2d 304, 306-7 [37 P.2d
1050] and *De Greek* v. *Freeman, supra,* and our courts not
infrequently have used the words "dangerous instrumen-
tality" in reference to motor vehicles. (*People* v. *Chatham,*
43 Cal.App.2d 298, 301 [110 P.2d 704]; *Dawson* v. *Lalanne,
supra; Anderson* v. *Walters,* 135 Cal.App. 380, 384 [27 P.2d
100]; *Vedder* v. *Bireley,* 92 Cal.App. 52, 59 [267 P.724].)

The use of the words "dangerous instrumentality" to char-
acterize an automobile was criticized by the court in passing
on the refusal to give an instruction containing those words
in *Warnke* v. *Griffith Co.,* 133 Cal.App. 481, 497-8 [24 P.2d
583], but the court in that case conceded that "Similar in-
structions have been by different appellate courts approved
as not constituting error" and that "such a charge might
not be erroneous if given in connection with proper instruc-
tions as to the degree of care necessary for each to use to
avoid being negligent."

It is true that it has been generally held that a motor ve-
hicle is not a "dangerous instrumentality" in the sense that
dynamite, gunpowder, ferocious animals and the like have
been held to be dangerous instrumentalities so as to make
those responsible for them answerable for injuries to others
beyond the ordinary rules of negligence and respondeat su-
perior. (5 Am.Jur., 522-3; 42 C.J., 614, 615; *Whicker* v.
*Crescent Auto Co.,* 20 Cal.App.2d 240, 244 [66 P.2d 749].)
Our Supreme Court said in *Buelke* v. *Levenstadt,* 190 Cal.
684, 688 [214 P. 42]: "While an automobile is not, in and
of itself, a dangerous machine, it may become such in the
hands of a careless and indiscreet person."

While recognizing that a motor vehicle is not a dangerous
instrumentality in the sense of imposing unusual liability on
its owner or operator, "in a number of cases the courts have
referred to the automobile as a dangerous instrumentality in
the sense that a high degree [sic] of care must be exercised
by the person operating it." (5 Am.Jur. 524; 16 A.L.R.
272.)

▇ In the case before us the jury was properly instructed on what constitutes negligence and ordinary care; that the driver of the bus was not required to use extraordinary care but only ordinary care; that the driver of the bus was not required to use any greater degree of care than the plaintiff; and that the law forbids comparing negligence. Taken as a whole the jury could not well have misunderstood the instructions. In describing a motor vehicle as "a dangerous instrumentality, capable of inflicting serious and often fatal injuries," the trial court was only expressing a fact undoubtedly already within the knowledge of every juror, acquired from his own observations on the streets and highways of the state and from reading in the newspapers the almost daily accounts of traffic accidents and deaths. It is a truism founded upon common experience that a motor vehicle is an instrumentality capable of inflicting serious and often fatal injuries. It was proper so to instruct the jury. The use of the adjective "dangerous" in the descriptive phrase added no new or different idea to that otherwise expressed by the words "capable of inflicting serious and often fatal injuries." Considered with the other instructions the criticized instruction did no more than point up for the jury the accepted rule that in reaching the degree of ordinary care "the care to be exercised in the use of any instrumentality is proportionate to the possibilities arising from its careless use." (*Whicker* v. *Crescent Auto Co., supra,* at p. 244; 19 Cal.Jur. 579-581.)

The order appealed from is affirmed.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied March 25, 1944, and appellants' petition for a hearing by the Supreme Court was denied April 20, 1944. Edmonds, J., and Traynor, J., voted for a hearing.