Filed 2/17/21  Montgomery v. The Whiskey Barrel Hesperia, LLC CA4/2
Opinion following rehearing

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| NICHOLAS MONTGOMERY, | |
| Plaintiff and Appellant, | E071477 |
| v. | (Super.Ct.No. CIVDS1518148) |
| THE WHISKEY BARREL HESPERIA, LLC, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  Bryan Foster, Judge.  Reversed and remanded with directions.

Carrazco Law, Angel Carrazco, Jr., Kent M. Henderson and Christopher L. Holm, for Plaintiff and Appellant.

Hartsuyker, Stratman & Williams-Abrego and J. Michael McClure; Veatch Carlson and Serena L. Nervez, for Defendant and Respondent.

1

I.

INTRODUCTION

During a fight between Fred Romero[1] and plaintiff and appellant, Nicholas

Montgomery, at The Whiskey Barrel Hesperia, LLC (Whiskey Barrel), Romero gouged

out Montgomery's left eye. Montgomery sued the owner of Whiskey Barrel for

negligence and damages. The jury entered a verdict finding Whiskey Barrel 10 percent

liable for negligence because Whiskey Barrel's security guards did not eject Romero

from the premises after an initial altercation, which occurred shortly before the fight

leading to Montgomery losing his eye. Because the jury found Montgomery sustained

zero noneconomic damages, the trial court granted Montgomery's motion for a new trial,

subject to an additur awarding Montgomery $1,000,000 in past and future noneconomic

damages. Whiskey Barrel accepted the additur. Montgomery appeals the judgment.

Montgomery contends the trial court erred in issuing an additur because there were

inadequate damages and the evidence of liability was in sharp conflict. Montgomery

argues that, under such circumstances, the trial court was required to grant a new trial as

to all issues. Montgomery further contends the trial court erred under Code of Civil

Procedure section 657[2] by not specifying what evidence it relied upon in issuing the

additur. We need not address whether the trial court's order complied with the section

---

[1] Romero is not a party to this appeal.

[2] Unless otherwise noted, all statutory references are to the Code of Civil Procedure.

2

657 specificity requirements because we conclude the judgment must be reversed on the ground the additur was improper. The sharply conflicting evidence of liability and inadequate damages suggest a compromise verdict, requiring a new trial as to all issues. The order granting the motion for new trial with additur, the acceptance of the additur, and the amended judgment filed on September 13, 2018, are thus reversed and the matter is remanded for a new trial on all issues.

## II.

## FACTS

During the evening of Saint Patrick's Day, March 17, 2015, Montgomery, who was 25 years old, went to the Tilted Kilt and had a few beers with his friends. Later, at 10:30 p.m., they joined Miranda Mobley at Whiskey Barrel. A security guard was stationed at the door, checking identification and using a wand to detect weapons. After entering Whiskey Barrel, Montgomery had a couple of beers.

Montgomery testified that, as he and his friends sat at a table at Whiskey Barrel, Fred Romero walked by several times and pulled Mobley's ponytail. Although Montgomery thought Romero's conduct was inappropriate and embarrassed Mobley, Montgomery did not notify the Whiskey Barrel manager or security guards.

Later that evening, after Montgomery returned from the restroom, he found Romero seated at Montgomery's table, drinking beer Montgomery had purchased for his friends. Montgomery testified that he and Romero argued, and then Romero threw beer at Montgomery. In response, Montgomery pushed Romero, which knocked a glass of

3

beer off the table, onto the floor, shattering the glass. Eric Hughes, a Whiskey Barrel security guard, approached and asked what was going on. Montgomery did not respond. Romero walked away, over to the bar. Immediately after the incident, Whiskey Barrel staff began cleaning up.

Because of the mess on the table and glass on the floor, Hughes moved Montgomery and his friends to another nearby table. After Hughes left the area, a friend of Romero's approached Montgomery and apologized for the incident involving Romero. Romero's friend told Montgomery that Mobley and Romero used to date but were now just friends, and that was what they did as friends. Montgomery replied he was very sorry about the incident and felt he had overreacted. Montgomery added that he was unaware of Mobley and Romero's prior relationship. Romero's friend and Montgomery shook hands. Montgomery thought the incident was over.

Montgomery testified that about two minutes later, Romero approached him from behind and struck him in the face with the back of his hand while holding a beer in his other hand. Montgomery reacted by running towards Romero and attacking him, because Romero had just hit him. During the fight between Romero and Montgomery, Romero gouged out Montgomery's left eye. Montgomery testified it felt like he had a dagger in his eye. According to the surveillance video of the incident shown to the jury, Hughes immediately responded within two seconds of the altercation.

Mobley testified she did not recall Romero pulling her ponytail, Montgomery pushing Romero, or Romero striking Montgomery from behind. She recalled getting beer in her face and feeling Romero and Montgomery at her feet.

Romero testified he did not pull Mobley's ponytail and did not know why Montgomery pushed him during the first incident. Romero denied throwing beer at Montgomery. Romero testified he pled guilty to felony battery for injuring Montgomery and acknowledged that he made a bad decision when he slapped Montgomery's face.

Hughes testified he was four or five tables away when he noticed commotion during the first incident. Two individuals at the table got into an argument and were loud. Hughes did not see Montgomery push Romero. He went over to Montgomery's table. There were five people at the table. The people told Hughes they were all friends being rowdy and nothing was going on. They said it was St. Patrick's Day and they were having a good time. Hughes told the group to keep it down. Hughes testified that, two and a half minutes later, during the second altercation, he did not see Romero hit Montgomery's face with his hand. Within seconds after Montgomery responded by attacking Romero, Hughes attempted to break up the fight.

As a result of losing his left eye during the fight, Montgomery had two surgeries to remove the uvea and scrape out everything in the eye socket, leaving the sclera shell. Because Montgomery had to wait for the eye area to heal, it took one year and three months before Montgomery could use a plastic eye prosthesis to fill the eye socket. Neuro-ophthalmologist Dr. Sadun testified that Montgomery could do most things with

5

one eye but had reduced depth perception and reduced peripheral vision, from 180 degrees to 130 degrees. Montgomery was also at risk of getting glaucoma and must be vigilant in taking care of his good eye.

Montgomery testified that people would stare at him and he felt like he looked "weird." The recovery process was painful and he had to get used to the prosthesis. Montgomery now sleeps with the prosthesis and cleans it every morning. Sometimes the prosthesis moves out of place and he is unaware of this unless someone tells him, which is embarrassing. After his eye injury, Montgomery has had to work harder to prove he can do certain tasks during his work as a heavy equipment mechanic. Montgomery also stopped playing softball and riding dirt bikes on a track. His mother testified Montgomery has become less outgoing. After the incident, Montgomery initially had "really, really bad" anxiety. At the time of the trial, it was "not so bad."

Montgomery's security expert, Scott DeFoe, testified that security guards at Whiskey Barrel were required to have valid guard cards through the state Bureau of Security Investigative Services. Hughes's guard card expired in 2005. In DeFoe's opinion, Montgomery and Romero should have been escorted off the premises after the initial incident, when Montgomery pushed Romero. According to DeFoe, Whiskey Barrel failed to properly train their security guards and lacked internal policies requiring removal of patrons from the premises if seen causing a disturbance or fight. DeFoe acknowledged that a sudden assault could have occurred even if Whiskey Barrel had adequate security in place. DeFoe did not observe in the video of the incident any

6

indication Hughes had seen Montgomery push Romero or that Romero pulled Mobley's hair.

Whiskey Barrel's security expert, Chris McGoey, testified that Whiskey Barrel is classified as a restaurant because it serves a full food menu. It was therefore not legally required to have security. Whiskey Barrel opened in November 2014. From that time until the subject incident four months later, there had not been any violence at Whiskey Barrel. McGoey stated that, in his opinion, the risk of an assault or other crime or injury at Whiskey Barrel on March 17, 2015, was very low. Nevertheless, that night Whiskey Barrel had three security guards: one who checked identification at the door; one who covered the left side of the restaurant; and Hughes, who covered the right side of the restaurant. The industry standard for a high risk club was one guard for every 50 patrons. Whiskey Barrel had three guards for 80 patrons the night of the incident. McGoey concluded Whiskey Barrel had adequate security and the security guards responded appropriately to the altercations involving Montgomery and Romero.

McGoey agreed the video did not show Romero throwing a glass of beer at Montgomery before Montgomery pushed Romero during the first incident. Therefore, in McGoey's opinion, Montgomery was the aggressor during the first incident. McGoey testified that, although Hughes did not see Montgomery push Romero, Hughes properly responded when he became aware of the commotion by speaking to the group for about a minute. McGoey concluded Hughes's actions were reasonable. McGoey testified that during the second altercation, when Romero backhanded Montgomery, Romero was the

7

aggressor. The video showed that after Romero hit Montgomery, Romero backed up 10 feet and took a stance indicating "come and get me." Because Montgomery at that point had the option of calling security and not fighting Romero, Montgomery became the aggressor when he charged toward Romero.

III.

PROCEDURAL BACKGROUND

Montgomery filed a complaint against Whiskey Barrel for damages. The complaint included causes of action for negligence, assault, and battery. Only the negligence cause of action is against Whiskey Barrel. The other causes of action were against unnamed Doe defendants who were either Whiskey Barrel "bouncers" or individuals who threatened and attacked Montgomery. The complaint alleged in the first cause of action for negligence that while Montgomery was a patron at Whiskey Barrel on March 17, 2015, he was harassed and threatened. Whiskey Barrel knew Montgomery was about to be attacked. Because Whiskey Barrel bouncers negligently failed to intervene and escort the attacker out of Whiskey Barrel, Montgomery was struck in the face with a glass and closed fists, causing him to lose his left eye and suffer severe injuries. Whiskey Barrel also allegedly negligently managed, hired, trained, employed, and supervised its bouncers.

Before the trial, the parties stipulated Montgomery incurred economic loss in the amount of $11,697.92, for lost earnings, and $75,000 in future economic damages for future medical costs. On the twelfth day of trial, the jury returned a special verdict,

8

finding Montgomery 45 percent at fault, Romero 45 percent at fault, and Whiskey Barrel 10 percent at fault. The jury also found zero past and future noneconomic loss, including past and future physical pain and mental suffering.[3] The jury was polled and then excused, without either party requesting the jury under section 619 to clarify its verdict. On June 28, 2018, the trial court entered judgment in favor of Montgomery and against Whiskey Barrel in the amount of $47,683.86 (55% of $86,697.92, Montgomery's economic damages).

Montgomery filed a motion for new trial on "damages and on percentages of fault." Montgomery argued in his motion that the award of zero past and future noneconomic damages constituted inadequate damages and the jury failed to follow the jury instruction requiring an award of damages for each item of harm caused by Whiskey Barrel. Whiskey Barrel filed opposition, arguing the motion should be denied. Alternatively, Whiskey Barrel requested the trial court to issue an additur "in an amount [that] the court in its independent judgment determines from the evidence to be fair and reasonable." Montgomery argued in its reply brief that the jury was required to award noneconomic damages and that the jury reached a compromise verdict.

---

[3] The judgment was amended to correct a clerical error in the judgment, in which the original judgment stated "d. Past noneconomic loss," and was corrected to state: "d. Future noneconomic loss." The original judgment stated in paragraph c, "Past noneconomic loss," and then erroneously stated it again in paragraph d. This was obvious clerical error, which contradicted the special verdict.

9

During the hearing on Montgomery's motion for new trial on August 31, 2018, the court stated it was inclined to grant Montgomery's motion for new trial as to the entire action, without an additur. The court concluded that the judgment was unlawful because there were "no damages assessed as to general damages." The parties and court discussed at length whether the court should grant a motion for new trial subject to an additur. Montgomery argued there was a sharp conflict in the evidence regarding liability. Therefore, an additur was improper. Counsel for Whiskey Barrel disagreed, urging the court to issue an additur.

The court noted that the jury verdict appeared to be a compromise verdict, with the jury split on the issue of liability. The court noted "the evidence was very light as far as the liability of the defendant." The court stated, "I would have given a defense verdict because I think that the showing as far as responsibility on the part of the security was minimal at best. I think that this was an altercation between two individuals." The court further stated that "I have some issues as to whether or not anything they did that was wrong actually caused this incident to occur. That is a question in my mind. And secondly, as far as the damages are concerned I don't have any problem with their economic damages. I do have a problem with the fact they gave no general damages which I think are required under the circumstances of this case."

With regard to an additur, the court acknowledged that it was "having difficulty setting an amount in terms of general damages that I think would be sufficient to indicate general damages. What I have real concerns [about is] as to the liability portion of it as

10

to what was actually caused by the defendants' actions. My intent at this point after listening to argument is to not give an additur on this matter, but to grant a new trial only on the issue of causation and damages."

After taking the matter under submission, the trial court entered a written ruling on Montgomery's motion for new trial on August 31, 2018, stating the following: "The Court finds that the evidence clearly shows that Plaintiff sustained pain, suffering, disfigurement, loss of enjoyment of life, mental suffering and functional impairment as a result of the loss of his eye. There was no evidence introduced that contested the Plaintiff's noneconomic damages. The jury failed to assess any compensation for the noneconomic damages sustained. The Court finds that a fair and reasonable award for noneconomic damages is $1,000,000. [¶] The Court grants the Plaintiff's motion for new trial based on insufficiency of the evidence because the damages are inadequate subject to the condition that if Defendant accepts an additur to the judgment of $100,000 determined by assessing past and future noneconomic damages of $1,000,000 and applying the jury's determination of 10% apportionment of damages caused by the negligence of the defendant. [¶] If Defendant does not accept the additur within 15 days of the date of this ruling, Plaintiff's motion for new trial on all issues is granted."

Whiskey Barrel filed a timely notice of acceptance of additur. The trial court thereafter entered an amended judgment, which added to the judgment the additur and entered judgment in favor of Montgomery and against Whiskey Barrel in the amount of $147,683.86. Montgomery filed a notice of appeal from the judgment, order granting the

11

motion for new trial with additur, acceptance of the additur, and amended judgment filed on September 13, 2018.

## IV.

## ADDITUR

Montgomery contends the trial court abused its discretion by granting his motion for a new trial, subject to and conditional upon an additur.

### A. *Standard of review*

The trial court's order granting a motion for a new trial subject to a remittitur or additur will not be reversed unless it plainly appears that the trial court abused its discretion. (*Gerard v. Ross* (1988) 204 Cal.App.3d 968, 978 (*Gerard*); *Jehl v. Southern Pac. Co.* (1967) 66 Cal.2d 821, 832 (*Jehl*).) "'All presumptions are in favor of the order and it will be affirmed if it is sustainable on any ground.' [Citation.] In passing on a motion for a new trial the trial judge is entitled to reweigh the evidence and exercise his independent judgment thereon and if he concludes that the damages awarded do not adequately compensate for the injuries sustained he may grant a new trial." (*Harper v. Superior Air Parts* (1954) 124 Cal.App.2d 91, 94.)

### B. *Law Applicable to a Motion for New Trial Conditional Upon Additur*

Section 657, which governs motions for new trial, states in relevant part: "The verdict may be vacated and any other decision may be modified or vacated, in whole or in part, and a new or further trial granted on all or part of the issues, on the application of the party aggrieved, for any of the following causes, materially affecting the substantial

rights of such party: . . . [¶] 5. Excessive or inadequate damages. [¶] 6. Insufficiency of the evidence to justify the verdict or other decision, or the verdict or other decision is against law." Section 657 further states that, "A new trial shall not be granted upon the ground of insufficiency of the evidence to justify the verdict or other decision, nor upon the ground of excessive or inadequate damages, unless after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the court or jury clearly should have reached a different verdict or decision."

Section 662.5 authorizes the court to issue an additur as an alternative to granting a new trial. Section 662.5 provides in relevant part: "(a) In any civil action where after trial by jury an order granting a new trial limited to the issue of damages would be proper, the trial court may in its discretion: [¶] (1) If the ground for granting a new trial is inadequate damages, issue a conditional order granting the new trial unless the party against whom the verdict has been rendered consents to the addition of damages in an amount the court in its independent judgment determines from the evidence to be fair and reasonable."

In *Jehl*, *supra*, 66 Cal.2d 821, the court addressed the trial court's failure to consider the option of issuing an additur. The *Jehl* court affirmed the order granting the plaintiff a new trial limited to damages but remanded the case to allow the trial court to exercise its discretion in determining whether to grant a conditional additur. (*Id.* at pp. 833, 835.) In reaching its holding, the *Jehl* court explained that, "[u]pon a motion for new trial grounded on insufficiency of the evidence because the damages are inadequate,

13

the court should [1] first determine whether the damages are clearly inadequate and, if so, [2] whether the case would be a proper one for granting a motion for new trial limited to damages. [Citation.] [] If both conditions exist, [3] the court in its discretion may issue an order granting the motion for new trial unless the defendant consents to an additur as determined by the court." (*Id.* at p. 832, fn. omitted.)

C. *Inadequate Noneconomic Damages*

It is unrefuted that the jury awarded Montgomery "clearly inadequate" noneconomic damages. (*Jehl*, *supra*, 66 Cal.2d at p. 832.) Montgomery's eye was gouged out, which caused him to suffer from, among other things, severe pain, several eye surgeries, embarrassment from his changed facial appearance, adjusting to using a prosthetic eye, the loss of his left eye, and the loss or reduction of stereopsis (depth perception) and peripheral vision in his remaining eye.

The trial court instructed the jury that, "If you decide that Nicholas Montgomery [has] proved his claim against the Whiskey Barrel [Hesperia, LLC], you must also decide how much money will reasonably compensate Nicholas Montgomery for the harm. This compensation is called 'damages.'" (See CACI Instruction 3901.) The court explained to the jury that the damages the jury must decide "fall into two categories called economic damages and non-economic damages. (See CACI Instruction 3902.) The trial court instructed the jury that "items of non-economic damages" claimed by Montgomery included "[p]ast and future physical pain, mental suffering, loss of enjoyment of life, disfigurement and inconvenience." (See CACI Instruction 3905A.) Despite unrefuted

14

evidence that Montgomery suffered significant pain and suffering and emotional distress, the jury did not award him any past or future noneconomic damages.  The trial court therefore reasonably found that the jury award of zero past and future noneconomic damages was inadequate and not supported by the evidence.  Therefore, under section 657, granting a motion for a new trial would have been proper because the noneconomic damages were clearly inadequate.

D.  *Caselaw Applicable to Issuing an Additur*

The key issue here is whether the trial court abused its discretion in issuing an additur.  Montgomery argues that in the instant case granting a new trial limited to the issue of damages would have been improper under *Clifford v. Ruocco* (1952) 39 Cal.2d 327, 329 (*Clifford*); *Hamasaki v. Flotho* (1952) 39 Cal.2d 602, 606-607 (*Hamasaki*); *Beagle v. Vasold* (1966) 65 Cal.2d 166, 183 (*Beagle*); *Gallentine v. Richardson* (1967) 248 Cal.App.2d 152, 156 (*Gallentine*); *Capelouto v. Kaiser Foundation Hospitals* (1972) 7 Cal.3d 889, 893 (*Capelouto*); *Smith v. Moffat* (1977) 73 Cal.App.3d 86, 95 (*Smith*); and *Gerard*, *supra*, 204 Cal.App.3d at p. 984.[4]  Montgomery asserts that under these cases he is entitled to an entire new trial as a matter of law because the jury awarded inadequate noneconomic damages and there was a sharp conflict in the evidence on liability,

_____

[4]  Although these cases, with the exception of *Gerard*, were decided before Proposition 51, this is not a significant consideration here.  Proposition 51 did not affect the general principles in deciding the motion for new trial and additur in the instant case.  Proposition 51, entitled the Fair Responsibility Act of 1986, effective June 4, 1986, provided for joint and several liability and allocated liability for damages based on percentages of fault.  (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 599-600; Civ. Code, §1431.2.)

15

suggesting a compromise verdict. Upon reviewing these cases cited by Montgomery, we conclude the trial court erred in issuing an additur, rather than granting a new trial on all issues. Whiskey Barrel has not cited any persuasive authority to the contrary.

In *Clifford*, *supra*, 39 Cal.2d 327, the defendant was in an automobile accident while driving the plaintiff. The jury returned a verdict for the plaintiff in the amount of $1,500. The plaintiff moved for a new trial on the ground the awarded damages were inadequate. The trial court conditionally granted the motion for new trial of all issues unless the defendant consented to paying the plaintiff $2,000 in damages. The defendant consented, but the plaintiff refused to accept the additur award. The trial court then denied the motion for new trial and entered a judgment for $1,500.

The *Clifford* court concluded there was substantial evidence the defendant's negligence caused the accident and that the plaintiff's damages were inadequate as a matter of law and therefore must be reversed. (*Clifford*, *supra*, 39 Cal.2d at pp. 328-639.) In *Clifford*, the court addressed the issue of "whether the case should be remanded on all the issues or on the issue of damages alone." (*Id.* at p. 329.) The *Clifford* court stated that, "on an appeal from a judgment where the evidence as to liability is 'overwhelming' a retrial may be limited to the issue of damages. [Citations.] Where, however, the evidence as to liability is in sharp and substantial conflict, and the damages awarded are so grossly inadequate as to indicate a compromise on the issues of liability and damages, the case should be remanded for a retrial of both issues. [Citations.] A failure to allow for undisputed special damages and loss of earnings is one circumstances which the

16

courts have considered as being some indication of a compromise verdict. [Citations.]" (*Id*. at pp. 329-330.)

In *Clifford*, the court further concluded there was a sharp and substantial conflict in the evidence on the question of liability. The *Clifford* court concluded that, in view of the conflict in the evidence, "and considering that the damages awarded were less than plaintiff's undisputed special damages and loss of earnings, it would appear that the verdict was the result of a compromise on the issues of liability and damages, and substantial justice requires that the case be retried in its entirety." (*Clifford*, *supra*, 39 Cal.2d at p. 330.) As a consequence, the *Clifford* court reversed the judgment awarding reduced damages after denying the plaintiff's motion for new trial. (*Ibid*.) Under *Clifford*, this court must consider whether there was a conflict in the evidence and whether there were inadequate damages, when determining whether the jury verdict was a compromise verdict requiring a new trial on all issues.

In *Hamasaki*, *supra*, 39 Cal.2d 602, the trial court denied the plaintiffs' motion for an entire new trial but granted a motion for new trial limited to the issue of damages, after the defendants rejected a judgment for $7,500. The child plaintiff was severely injured while crossing the street, when hit by the defendant's vehicle. There was conflicting evidence as to both liability and damages. On appeal, the defendants argued the jury entered a compromise verdict by awarding little more than the amount of special damages. The court in *Hamasaki* concluded the jury award for general damages was grossly inadequate. (*Id*. at pp. 606-607.) The *Hamasaki* court further held that the trial

17

court erred in granting the plaintiffs' motion for new trial on the issue of damages only. The order was reversed and the trial court was directed to vacate the judgment and order a new trial on all issues. (*Id.* at p. 612.)

The court in *Hamasaki* noted that, "[a]lthough the granting of a new trial limited to the issue of damages rests primarily in the discretion of the trial court, it is an abuse of discretion to grant such a new trial if the question of liability is close, if the damages awarded are grossly inadequate, and if there are other circumstances that indicate that the verdict was the result of prejudice or an improper compromise." (*Hamasaki*, *supra*, 39 Cal.2d at pp. 604-605.)

The *Hamasaki* court further stated the following principles govern the granting of partial new trials: "A new trial limited to the damages issue may be ordered by the trial court when it can reasonably be said that the liability issue has been determined by the jury. A refusal to allow for undisputed special damages is usually convincing evidence that the jury failed to make a decision of the liability issue, and that circumstance has therefore been stressed in a number of appellate opinions. [Citations.] In a particular case, however, gross inadequacy of unliquidated general damages may be just as convincing. . . . As a general rule, it is only when the verdict allows a substantial, even though inadequate, amount for general damages that it can reasonably be concluded that the jury's error related solely to the damages issue." (*Hamasaki*, *supra*, 39 Cal.2d at pp. 606-607.)

In *Hughes v. Schwartz* (1942) 51 Cal.App.2d 362, cited by *Hamasaki*, *supra*, 39 Cal.2d 602, the court explained that, "where no award at all is made for general damages[,] the only possible explanation is that the jurors compromised the issue of liability, and it is error to limit the new trial to the issue of damages alone.  But where, as in the instant case, a substantial but inadequate award of general damages is made, the question as to whether the new trial should be limited rests within the discretion of the trial judge." (*Hughes v. Schwartz*, *supra*, at p. 368.)

*Hamasaki* also cited *McNear v. Pacific Greyhound Lines* (1944) 63 Cal.App.2d 11, in support of this general rule.  In *McNear*, the court stated that "it is an abuse of discretion to limit a new trial to the issue of damages when the amount awarded by the jury is so small in view of the damages proved that it must be concluded that the verdict is the result of some of the jurors sacrificing their conscientiously held view that the defendant was not liable and agreeing to a small but inadequate award for the plaintiff in order to arrive at some verdict." (*McNear v. Pacific Greyhound Lines*, *supra*, at pp. 15-16, citing *Hughes v. Schwartz*, *supra*, 51 Cal.App.2d at p. 368.)

The *Hamasaki* court further concluded the jury verdict was an improper compromise verdict requiring reversal of the order granting a limited new trial on damages, based on the great disparity between the jury's award of $182.90 in general damages and the judge's additur award of $6,682.90 for general damages, which was more than 36 times the jury's award of $182.90. (*Hamasaki*, *supra*, 39 Cal.2d at p. 607.) The *Hamasaki* court stated that this "great disparity between the jury's determination and

19

that of the judge provides an additional and striking indication that the jurors could not agree on the liability issue and that those who believed defendants were liable consented to inadequate damages in return for the votes of those who had decided that defendants should pay nothing." (*Ibid.*)

Here, as in *Hamasaki*, the question of Whiskey Barrel's liability was a close call and the general damages award of zero economic damages was grossly inadequate. As the trial court noted in the instant case, the evidence supported a finding of nonliability on the part of Whiskey Barrel. In addition, the jury's verdict attributed only 10 percent fault to Whiskey Barrel. This was after the jury had submitted a question during deliberations asking for examples of a substantial factor and then advising the court it had reached an impasse. After the court encouraged the jury to continue deliberations, the jury entered its verdict two hours later, apportioning liability between Montgomery (45%), Romero (45%), and Whiskey Barrel (10%). This is not a case in which "the verdict allows a substantial, even though inadequate, amount for general damages." (*Hamasaki*, *supra*, 39 Cal.2d at p. 607.) Here, the jury did not award any general damages.

In addition, with such a great disparity between the jury award of zero general damages and the trial court additur award of $1,000,000 in general damages, it cannot be reasonably concluded that the jury's error of awarding zero general damages related solely to the damages issue. As the trial court initially noted, the jury verdict appears to be a compromise verdict in which "the grossly inadequate award cannot reasonably be

20

explained as a mere error of the jury in the assessment of damages." (*Hamasaki*, *supra*, 39 Cal.2d at p. 607.)

There was also conflicting evidence regarding liability and percentages of fault, including that of Whiskey Barrel. There was conflicting evidence as to whether Romero was the aggressor during the first confrontation. It was disputed as to whether he pulled Mobley's ponytail and threw beer in plaintiff's face. It was also disputed whether Romero initiated the second altercation by hitting Montgomery in the face or whether Montgomery was the aggressor when he attacked Romero. In addition, there was conflicting evidence as to whether Whiskey Barrel was negligent in any way. There was conflicting testimony by the parties' security experts as to whether Whiskey Barrel and its security guards, including Hughes, provided inadequate security and were negligent during the incident. Therefore, the question of liability and percentages of fault were disputed and close, particularly as to Whiskey Barrel.

Under *Hamasaki*, in the instant case, the conflicting evidence and jury verdict award of zero general damages suggested a compromise verdict requiring a new trial on all issues. It was therefore an abuse of discretion to grant a new trial conditional upon an additur, when the question of liability was close and the damages awarded by the jury were grossly inadequate. (*Hamasaki*, *supra*, 39 Cal.2d at pp. 604-605.)

21

*Beagle*, *supra*, 65 Cal.2d 166, also supports this proposition.  In *Beagle*, the plaintiff suffered injuries from an accident in which the plaintiff was a passenger in a car that went over an embankment.  The driver died from the accident.  The plaintiff suffered serious injuries, including vision impairment and severe, radiating back pain.  The plaintiff's injuries prevented him from returning to work as a carpenter.  The plaintiff requested $21,502.48 in special damages, including $1,377.48 in past medical expenses.  The jury returned a verdict for $1,719.48 in favor of the plaintiff.  The verdict thus amounted to only $342 more than the plaintiff's past medical expenses.  The plaintiff appealed, contending the damages were inadequate.  The plaintiff argued the trial court erred in prohibiting his attorney from stating during closing argument the specific amount of general damages plaintiff was claiming or, alternatively, stating a per diem amount.  The *Beagle* court agreed.  (*Id.* at pp. 171-181, 183.)

In finding prejudice, the *Beagle* court explained:  "When prejudicial error appears in the determination of the issue of damages, 'It has been held that on an appeal from a judgment where the evidence as to liability is "overwhelming" a retrial may be limited to the issue of damages.  [Citations.]  Where, however, the evidence as to liability is in sharp and substantial conflict, and the damages awarded are so grossly inadequate as to indicate a compromise on the issues of liability and damages, the case should be remanded for a retrial of both issues.'"  (*Beagle*, *supra*, 65 Cal.2d at p. 183, citing *Clifford*, *supra*, 39 Cal.2d at p. 329; *Hamasaki*, *supra*, 39 Cal.2d at pp. 604-607.)

22

*Beagle*, *supra*, 65 Cal.2d 166, supports the proposition that, here, there was a compromise verdict on the issues of liability and damages, because the evidence as to liability was in sharp and substantial conflict, and the damages awarded were grossly inadequate. Therefore, the case should be remanded for a retrial of both liability and damages. (*Id*. at p. 183; *Clifford*, *supra*, 39 Cal.2d at p. 329; *Hamasaki*, *supra*, 39 Cal.2d at pp. 604-607.)

In *Gallentine*, *supra*, 248 Cal.App.2d 152, the plaintiff sustained a gunshot wound to the kidney area by the defendant while deer hunting. The parties stipulated that the plaintiff's medical expenses totaled $297.60, and he incurred $225 in loss of earnings. (*Id.* at p. 154.) The jury did not award any general damages for pain, suffering, inconvenience, shock, or mental suffering. The *Gallentine* court noted that the defendant did not seriously dispute the extent of the plaintiff's injuries, or dispute that the plaintiff's expenses were proximately caused by the gunshot wound. (*Ibid*.) The *Gallentine* court held the damages award, which was limited to special damages, was inadequate as a matter of law. (*Id.* at p. 155.) The *Gallentine* court further concluded that, because the general damages award was grossly inadequate, the jury award was a compromise verdict, which required reversal of the judgment and remand the case for an entire new trial. (*Id.* at p. 156.) The *Gallentine* court rejected the plaintiff's request for a new trial limited to the issue of damages because ""[i]t would work a grave injustice upon defendant to force it to a new trial of the issue as to damages only, with the issue as to

liability, upon which no verdict other than in name had been rendered, forever closed against any inquiry."'"" (*Ibid.*)

In reaching its holding, the court in *Gallentine* noted the well-established principles that, "[g]enerally speaking, a judgment will be reversed on the grounds that the damages are inadequate only where the award is found to be inadequate on a fair consideration of the evidence." (*Gallentine*, *supra*, 248 Cal.App.2d at p. 154.)  The *Gallentine* court added that, "'If the liability is undisputed or clear, the reversal may be for a limited new trial on the issue of damages.  But where the evidence of liability is so doubtful or sharply conflicting as to indicate a compromise verdict, the reversal will be general.'" (*Id*. at p. 154, citing 2 Witkin, Summary of Cal. Law (7th ed. 1960) Torts, § 448, p. 164; see *Clifford*, *supra*, 3 Cal.2d at p. 329.)

The *Gallentine* court further stated:  "When a verdict has been returned for the exact amount of special damages in a case where substantial general damages were obviously incurred, and where a strong case of negligence has been made, a denial of a new trial by the trial court must be held an abuse of discretion and a judgment on a verdict in an insufficient amount may not be affirmed.  [Citations.]  We find this to be such a case." (*Gallentine*, *supra*, 248 Cal.App.2d at p. 155.)  Furthermore, "'[a] limited new trial should not be granted, where substantial justice requires that a new trial, if granted at all, should cover all the issues.'" (*Id.* at p. 156.)

Here, as in *Gallentine*, *supra*, 248 Cal.App.2d 152, the jury award included stipulated special damages and no general damages, even though the evidence established that Montgomery sustained serious injuries and was entitled to general damages. As the court in *Gallentine* held, limiting the new trial to only the issue of damages was improper because the jury award appeared to have been a compromise verdict. Therefore, an additur was also improper.

In *Capelouto*, *supra*, 7 Cal.3d 889, the Supreme Court also addressed the issue of the proper scope of a new trial. (*Id.* at pp. 892, 897.) In determining whether to remand the case for a new trial of all issues or just damages, the court in *Capelouto* did not view the infant plaintiff's recovery, consisting of only special damages, as evidence of a compromise because the damages award, although relatively small, constituted the most the jury could award the plaintiff pursuant to the trial judge's instructions. The trial court instructed the jury it could not award the infant plaintiff any general damages. Because ample evidence supported the jury's finding of liability against the defendant and the jury awarded the maximum amount permissible under the erroneous instructions on damages, the *Capelouto* court reversed the judgment only as to the damages and ordered a limited new trial solely on the issue of damages. (*Id.* at pp. 891, 898.)

*Capelouto*, *supra*, 7 Cal.3d 889, is distinguishable in that in the instant case the inadequate damages were not the result of an erroneous instruction precluding the jury from awarding general damages. Unlike in the instant case, the circumstances in *Capelouto* did not support a finding there was a compromise verdict. The lack of general

25

damages in *Capelouto* was in accordance with an erroneous jury instruction precluding general damages. However, in the instant case, the jury was instructed to award damages for all injuries and losses, including general damages for pain and suffering. Unlike in *Capelouto*, here, the jury did not comply with the damages instructions. The jury did not award any general damages when it was instructed to do so where there was unrefuted evidence of general damages. This failure to award any general damages, along with conflicting evidence of proportionate liability on the part of Montgomery, Romero, and Whiskey Barrel, furnished sufficient proof of a compromise verdict, such that a new trial on all issues was required.

In *Smith*, *supra*, 73 Cal.App.3d 86, the plaintiff minor brought a wrongful death action against the defendant medical providers. The jury awarded the plaintiff $5,000 in damages. The trial court granted the plaintiff's motion for new trial on all issues as against the defendant physician. The trial court concluded the jury awarded inadequate damages and the evidence was insufficient to support liability against the defendant physician. (*Id*. at pp. 89-90.) The defendant appealed the order granting the new trial and the plaintiff filed a cross-appeal of the judgment on the ground the damages were inadequate as a matter of law. (*Id*. at p. 93.)

The *Smith* court concluded it need not decide the defendant's appeal of the order granting a new trial because the court reversed the judgment on the plaintiff's cross-appeal. Consistent with well-established case law, the *Smith* court concluded that the sharp conflict in evidence of liability and the inadequate award of damages suggested a

compromise verdict requiring reversal the judgment and order granting a new trial. (*Smith*, *supra*, 73 Cal.App.3d pp. 89, 91, 93-95.)

In reaching its holding on the plaintiff's cross-appeal, the *Smith* court explained that, "[w]hile as a general rule the factfinders are the final judges of the extent of damages suffered by a plaintiff in a tort action, the rule is not of universal application. The uncontradicted evidence may demonstrate that the damages awarded are so inadequate as to justify appellate intervention. [Citations.] In such cases, the award has been held to be insufficient as a matter of law and to warrant reversal of the judgment." (*Smith*, *supra*, 73 Cal.App.3d at p. 94, citing *Clifford v. Ruocco*, *supra*, 39 Cal.2d 327, 329.) In *Smith*, the court held the jury's damages award "was so grossly disproportionate to the economic loss sustained by the child, not to mention the loss of the society and comfort of his mother, that it must be held to be inadequate as a matter of law. The judgment must, therefore, be reversed." (*Smith*, *supra*, at p. 94.)

The *Smith* court then addressed the question of whether the judgment should be reversed in its entirety or on the damage issue alone as requested by the plaintiff. (*Smith*, *supra*, 73 Cal.App.3d p. 94.) The court concluded that, "[a]lthough a retrial may be limited to damages where the evidence of liability is overwhelming, whereas here the evidence on liability is in sharp conflict and the award is manifestly so inadequate as to suggest a compromise verdict, the case should be remanded for retrial on all issues." (*Id.* at pp. 94-95, citing *Hamasaki*, *supra*, 39 Cal.2d at pp. 606-607; *Clifford*, *supra*, 39 Cal.2d 327, 329, 246 P.2d 651.)

Finally, in *Gerard*, *supra*, 204 Cal.App.3d 968, the plaintiff, George Gerard, filed claims for malicious prosecution and conspiracy. The jury returned a special verdict, finding the defendants liable for malicious prosecution and awarding Gerard special damages and punitives, but no general damages. Thereafter, the trial court granted one of the defendant's motion for new trial subject to a remittitur of the punitive damages, reducing the punitive damage award from $50,000 to $25,000. Gerard accepted the remittitur but then appealed, arguing among other things that the jury's special damages award was inadequate. Gerard requested the *Gerard* court to increase the award by $1,000 plus 6 percent interest.

In addressing this contention, the *Gerard* court stated the well-established principle that "Section 662.5 grants the trial court discretion to exercise its additur powers to determine, upon its review of the entire record, an addition which is fair and reasonable. The Law Revision Commission comment on this section states that: 'The exercise of additur authority . . . is limited to cases where "an order granting a new trial limited to the issue of damages would . . . be proper." This limitation prevents the use of additur where the inadequate damages are the result of a compromise on liability.'" (*Gerard*, *supra*, 204 Cal.App.3d at p. 984.) The *Gerard* court added that it would "disturb a trial court's refusal to exercise its additur power only if the record reveals an abuse of discretion." (*Ibid.*)

28

Based on these principles, the *Gerard* court upheld the special damages award, concluding that Gerard had not demonstrated that the jury verdict was a compromise verdict. The *Gerard* court reasoned that "Gerard points us solely to the fact that the jury's award of compensatory damages was exactly $1,000 less tha[n] the amount Gerard's testimony identified. Without more, this is an insufficient fact upon which to base a conclusion that the trial court abused its discretion." (*Gerard*, *supra*, 204 Cal.App.3d at p. 984.)

The instant case is distinguishable from *Gerard*, *supra*, 204 Cal.App.3d 968, in that in the instant case the jury award was obviously erroneous because the jury did not award any noneconomic damages even though there was unrefuted evidence Montgomery suffered noneconomic damages. Under the well-established case law on motions for new trial and additurs, the trial court's order issuing an additur was improper because there was conflicting evidence on liability and it was unrefuted the jury awarded inadequate general damages. We therefore conclude the trial court erred in issuing an additur and, instead, was required to grant a new trial on all of the issues.

V.

DISPOSITION

The trial court order granting the motion for new trial with additur, the defendant's acceptance of the additur, and the amended judgment filed on September 13, 2018, are reversed and the matter is remanded to the trial court for a new trial on all issues.

Pursuant to the parties' stipulation to settle, filed with this court on November 12, 2020, the parties have agreed to settlement of this case upon (1) this court entering its decision reversing the trial court judgment; (2) this court's opinion becoming final immediately upon entry of the decision, with the clerk of this court issuing a remittitur forthwith; and (3) all parties waiving all rights to seek rehearing or review.

Accordingly, each party is ordered to bear its own costs on appeal and the clerk of this court is directed to issue the remittitur forthwith.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

RAPHAEL
J.

30